INGRAM v. STEIN.—126 S. W. (2d) 891.

Middle Section.   December 10, 1938.

Petition for Certiorari denied by Supreme Court, April 1, 1939.

Elkin Garfinkle, of Nashville, for appellant Jake Stein.

Thos. H. Peebles, of Columbia, for appellee John G. Ingram.

CROWNOVER, J.   The complainant, John G. Ingram, filed his original bill in this cause seeking to recover compensation for his services as bookkeeper, it being alleged that no contract was ever entered into between the complainant and the defendant Stein as to the amount of the complainant's monthly salary and that, therefore, the fixing of his compensation should be determined on a basis of quantum meruit; that the reasonable value of his services was $50 per month; that he worked for the defendant six years, drawing approximately $25 per month, in small checks and in merchandise; and that there is a balance due him of $1,614.04.

The defendant filed an answer and cross-bill.   He alleged that a definite contract had been made between him and Ingram that he should be paid $25 per month; that he earned in six years' time the sum of $1,800; that he drew, in cash and merchandise, the sum of $1,972.96; and he asked, in his cross-bill, for a decree against Ingram for $172.96.

When the cause came on to be heard, the Chancellor, without deciding any issues, referred the case to the Clerk and Master, and directed him to examine the pleadings and evidence and report on the following questions:

"1.   Was the complainant, John G. Ingram, employed by the defendant, Jake Stein, at no fixed salary, or was it the understanding that he was to be paid a reasonable value for his services?

"2.   If he was so employed, what is the reasonable value of his services and what amount is due him?

"3.   Was the complainant employed by the defendant at a fixed salary of $25.00 per month?

"4.   If he was so employed, has he overdrawn said salary, and if so, in what amount?"

Both the complainant and the defendant excepted to said reference.

The Clerk and Master reported as follows:

"I beg leave to report that I have read the pleadings and proof on file which is here referred to and from the proof beg to report in response to the first question that John G. Ingram was employed by Jake Stein, and was to be paid a reasonable value for his services.

"Replying to the second question report that the sum of $50.00 per month is a reasonable amount to be paid for the services rendered and the sum of $1614.04 is due John G. Ingram from Jake Stein.

"Replying to the third question report that the complainant was not employed at the fixed salary of $25.00 per month."

The defendant, Stein, filed exceptions to the Master's report, which were overruled by the Chancellor.   The Chancellor confirmed the report and decreed that John G. Ingram recover of the defendant,

Jake Stein, the sum of $1,614.04 together with interest on the same from May 19, 1937, making a total of $1,666.50.

The defendant Stein excepted to said decree and appealed to this court and has assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in referring the whole case to the Master; it was the Chancellor's duty to determine the issue involved.

(2) The Chancellor erred in failing to hold that the defendant Stein had made a contract with Ingram to keep the books of his stores for the sum of $25 per month.

(3) The evidence preponderates against the finding of the Chancellor.

John G. Ingram was employed by Jake Stein from December 1, 1928, to November 30, 1934, a period of six years. He was about fifty-eight years of age when first employed. His duties were the keeping of the books and typewriting letters.

Stein had four stores in 1928. He disposed of one in 1931, one in 1932, and one in 1933; this left him with only his store in Mt. Pleasant.

Ingram was at the store in Mt. Pleasant from 8:30 in the morning to about 4:15 in the evening every day.

He did not draw a fixed amount per month, but drew checks at intervals in sums of $10, $2, etc. He bought articles of merchandise, charging himself on his account. In six years' time he drew a total of $1,972.96.

Stein discharged him.

He drew up a claim against Stein for $50 per month for six years less the amount drawn by him, and contended that Stein was indebted to him in this amount—$1,614.04.

1. The defendant's first assignment of error is that the Chancellor erred in ordering a reference in this cause.

The order of reference, hereinabove set out, asked the Master to determine and report to the Chancellor whether a contract had been entered into between Stein and Ingram for a fixed amount per month. This was the main controversy in the cause, and for this reason, although it was a question of fact, we are constrained to hold that the Chancellor was in error in referring it to the Master. State ex rel. v. Bolt, 130 Tenn., 212, 169 S. W., 761, and cases cited; Reed Bros. Stone, Inc., v. Pittman Const. Co., 20 Tenn. App., 552, 557, 101 S. W. (2d), 478.

In Gibson's Suits in Chancery, 4th Ed., sec. 596, it is said:

"The line of division, between matters proper to be referred to the Master, and matters not proper to be referred, is not well defined; but it may be stated, generally, that the main issues of the controversy, and the principles on which these issues are to be adjudicated, must be determined by the Chancellor, while collateral, subordinate, and incidental issues, and the ascertainment of facts ancillary to the de-

termination of the main issues, or to the execution of the decree, may be referred to the Master.''

The Chancellor was in error in referring the cause to the Master. However, the decree recites that the Chancellor considered all the evidence before rendering his decree.

■ But, the reference having been improperly ordered, it results that there is no concurrent finding of the Chancellor and the Master. Reed Bros. Stone Co., Inc., v. Pittman Const. Co., supra; State ex rel. v. Bolt, supra.

This court will therefore pass upon the case.

■ 2 and 3. The defendant's second and third assignments of errors must be sustained. Ingram testified that no contract for a definite salary was entered into. Stein testified that he made a contract with Ingram to pay him $25 per month. Rosenburg testified that Ingram told him his salary was $25 per month.

Ingram testified that when he was hired Stein asked him what he would charge per month and he told Stein he would charge what other firms had been paying him; that no agreement was reached as to the amount of his salary.

Stein testified that he made a contract with Ingram when he hired him, and agreed to pay him $25 per month.

Stein further testified that the work of keeping his books should not take more than an hour per day for two days a week; that he now pays a bookkeeper $20 per month, and she works about fifteen minutes a day, after she leaves another place where she is employed, except on Saturday, on which day she works two or three hours. He testified that no claim was made by Ingram that he owed him anything until after he was discharged.

Abe Rosenburg, a brother-in-law of Stein, who also is a merchant in Mt. Pleasant, testified that Ingram, after he had been working for Stein for a year or two, asked him if he could give him any work to do; that Ingram told him that Stein paid him only $25 per month. This was denied by Ingram.

This was all the evidence about the contract of hiring.

We are of the opinion that the preponderance of the evidence is that a contract was made between Ingram and Stein that Ingram should be paid $25 per month. For six years Ingram had drawn approximately $25 per month (in checks and merchandise), and admits he never mentioned, during that time, to Stein, that he was entitled to a hundred per cent. more salary. His explanation of why he didn't ask for it was that Stein was ''always hard up'' and ''hard to get money out of.'' But it seems more likely that Ingram would have been hard up, drawing $25 per month, than Stein with a business. Ingram made up financial statements for Stein every three months. He admits that he did not include in those statements, as a liability, any amounts that Stein owed him.

It results that the final decree rendered by the Chancellor in this cause will be reversed, and the complainant's bill is dismissed. It was stated by counsel for cross-complainant at bar that cross-complainant waived any claim against Ingram for a recovery on overpayment claimed in cross-bill; therefore no ·decree will be rendered· against Ingram, except as to costs. The costs of the cause including the costs of the appeal are decreed against Ingram and the surety on his prosecution bond.

Faw, P. J., and Felts, J., concur.