Ellen Percy ARCHER, Plaintiff/Appellee,

v.

Robert Neil ARCHER, III,
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

April 21, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 11, 1995.

Daniel Loyd Taylor, Michael B. McWherter, Taylor & McManus, Memphis, for appellant.

James C. Cox, Russell Fowler, Memphis, for appellee.

## OPINION

PAUL G. SUMMERS, Special Judge.

The parties were divorced in 1984. In 1992, appellee Ellen Percy Archer (Ms. Archer) filed a petition for contempt and alimony arrearages in the Circuit Court at Shelby County against appellant Robert Neil Archer, III (Mr. Archer). Mr. Archer filed a petition asking the court to reduce the amount of his monthly alimony obligation and to award child support to him. The court awarded $56,068.02 in alimony arrearages and $13,432.31 in attorney's fees to Ms. Archer. The court reduced Mr. Archer's monthly alimony obligation, but dismissed his claim for child support. The court dismissed Ms. Archer's contempt allegations. Mr. Archer has appealed.

The parties present the following issues for our review:

I. Whether Ms. Archer's claim to alimony arrearages is barred by the equitable defense of laches.

II. Whether the evidence in the record supports the trial court's award of $56,-068.02 in alimony arrearages.

III. Whether the trial court erred in failing to award Mr. Archer child support from Ms. Archer.

IV. Whether the trial court erred in awarding Mrs. Archer $13,432.31 in attorney's fees.

V. Whether the trial court erred in dismissing Ms. Archer's allegations of contempt against Mr. Archer.

We affirm in part, reverse in part, and remand to the trial court for action consistent with this opinion.

In July of 1984, the trial court granted Ms. Archer a divorce from Mr. Archer on grounds of irreconcilable differences. Ms. Archer received custody of the parties' three minor children, then ages 15, 11 and 7. Pursuant to the property settlement agreement (PSA), Mr. Archer agreed to pay the children's medical insurance and expenses, private elementary and secondary school tuition, college tuition and education related expenses. No other child support was ordered. Pursuant to the PSA, however, Mr. Archer agreed to pay $2,500.00 in alimony per month, beginning February 15, 1984, plus a yearly cost-of-living increase adjustment to this payment.

In October 1985 and January 1987, Ms. Archer filed petitions against Mr. Archer for noncompliance with the PSA. She asked the court to order Mr. Archer to comply with certain provisions of the PSA which she clearly set out in her petitions. The court dismissed both of Ms. Archer's petitions, apparently due to an agreement of the parties or because Mr. Archer complied with the alleged violations of the PSA. Ms. Archer did not raise the specific issue of alimony arrearages,[1] although she did ask the court to award her arrearages generally.

In February of 1987, Mr. Archer filed a petition informing the court that he was unable to meet the financial demands of the PSA because of changed circumstances. He asked the court to modify the PSA and to

---

1. Alimony arrearages refers to arrearages based on Mr. Archer's failure to add the cost-of-living adjustment to his alimony payments, not alimony generally.

forgive any accrued arrearages. Whether or how the court disposed of the petition is unclear from the record.

In April of 1991, Ms. Archer filed a petition for permission to move the parties' minor child to North Carolina because of the child's behavioral and substance abuse problems. She also asked the court to hold Mr. Archer in contempt for failing to pay the child's medical expenses. The court entered a consent order allowing removal of the child. The court continued the contempt allegations.

In June of 1991, Ms. Archer amended her contempt petition to claim alimony arrearages based on Mr. Archer's failure to pay the cost-of-living increase. This was the first time that she asserted a right to alimony arrearages. The court denied and dismissed the contempt petition at Ms. Archer's cost. The court did not address the alimony arrearage issue.

In August of 1992, Mr. Archer filed a petition for a credit against his alimony obligation because of expenses that he incurred on behalf of the child or for child support. He also asked the court to reduce his alimony obligation because of changed circumstances. In October of 1992, Ms. Archer filed a petition for contempt and for alimony arrearages. She alleged that Mr. Archer should have paid her $316,068.02 in alimony, including the cost-of-living increase, from February 15, 1984 through September 15, 1992. She alleged that Mr. Archer owed her $56,068.02 in alimony arrearages based on his failure to pay the cost-of-living increase. Mr. Archer responded that Ms. Archer's claim to arrearages was barred by laches. He alleged that Ms. Archer told him that she would not need the cost-of-living increase beyond that already paid and that he relied on her position to his detriment. He noted that she asked for the alimony arrearages after his petition for a reduction in alimony or for child support.

In March of 1993, the trial court referred the matter to a Special Master to determine any and all sums owed by Mr. Archer to Ms. Archer and to determine the income, and assets and liabilities of both parties.

The Special Master's report included the following recommendations: 1) Mr. Archer should pay $700.00 per month in alimony to Ms. Archer with the court to reevaluate his financial position in January 1994; 2) Mr. Archer's defense of laches should be rejected; 3) "It is recommended that the Court enter a judgment against Mr. Archer for $56,068.02, plus any arrearages accumulated through December 31, 1992, together with interest accumulated thereon. If counsel for the respective parties cannot come to an agreement as to this amount, I will be happy to calculate same[;]" 4) Ms. Archer should not be required to pay child support because such an order would violate the PSA; 5) Mr. Archer should pay $13,432.31 in attorney's fees to Ms. Archer because his failure to abide by the terms of the PSA has caused extensive litigation; 6) Mr. Archer should be held in contempt for failure to comply with the PSA.

The trial court confirmed the Special Master's report, except that she ordered Mr. Archer to pay $500 in monthly alimony payments, and she refused to find Mr. Archer in contempt of court because Ms. Archer had "allowed a pattern of payment to continue without contest."

### STANDARD OF REVIEW

The court's order referencing certain matters to the Special Master, the Special Master's report, and the trial court's order affect our standard of review on appeal. A concurrent finding of a master and a trial court is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. *Coates v. Thompson*, 713 S.W.2d 83, 84 (Tenn.Ct.App.1986). This standard of review is similar to our standard when reviewing a jury verdict; we must affirm if there is any material evidence to support the trial court's concurrence. *See Id.;* T.R.A.P. 13(d). This standard of review, however, does not apply to the issues in this case. The Special Master went beyond the court's order of reference, and he decided all of the issues in the case. The main issues of a controversy and

the principles on which these issues are to be adjudicated must be determined by the trial court. *State v. Bolt*, 130 Tenn. 212, 169 S.W. 761, 762 (1914); *Ingram v. Stein*, 23 Tenn. App. 105, 126 S.W.2d 891, 892 (1938). Collateral, subordinate, and incidental issues and the ascertainment of ancillary facts are matters properly referred to a special master. *Ingram*, 126 S.W.2d at 892. In this case, the Special Master's report is a statement of legal conclusions, and it contains very few findings of fact.

■ Given these circumstances, ordinarily our review of the trial court's determinations would be *de novo* with a presumption that the trial court's findings of fact are correct. *See* T.R.A.P. 13(d). The trial court, however, did not make any findings of fact, written or otherwise. When the trial court fails to make findings of fact there is nothing to which the presumption of correctness can attach. In such a situation, our review is *de novo* without a presumption of correctness. *Goodman v. Memphis Park Comm'n*, 851 S.W.2d 165, 166 (Tenn.Ct.App.1992); *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn.Ct.App. 1984). Accordingly, we proceed to review the evidence and the issues in this case *de novo*.

## ALIMONY ARREARAGES

The PSA provides as follows:

### *ALIMONY*

*2-a. Periodic Alimony.* As periodic alimony, Husband agrees to pay to Wife the sum of Two Thousand Five Hundred Dollars ($2,500.00) per month, commencing February 15, 1984. Said payments shall be due and payable directly to Wife on the fifteenth (15th) day of each and every month thereafter until her death or remarriage.

*2-b. Cost of Living Adjustment.* In addition to the amount payable in Paragraph 2-a above, Husband agrees to increase *his* periodic alimony obligations on a yearly basis to insure that the real value of these obligations is not impaired by economic conditions.

(1) At the end of the first year in which periodic alimony is paid, and at the end of each and every year thereafter, Husband shall calculate a cost of living increase bonus payment, and this amount shall be added in equal installments to the next year's payments.

(2) Each cost of living increase bonus payment shall be calculated by multiplying the total amounts payable in the previous year by five percent (5%).

■ Apparently, Mr. Archer increased his alimony obligation in 1985, but not thereafter. He contends that Ms. Archer's claim is barred by the equitable defense of laches. Laches is based on the doctrine of equitable estoppel and is only applied where the party invoking it has been prejudiced by the delay. *Freeman v. Martin Robowash, Inc.*, 457 S.W.2d 606, 611 (Tenn.Ct.App.1970). The essence of the defense is that a party has unreasonably and prejudicially delayed the asserting of a claim. 11 Tenn.Jur. *Equity* § 37 p. 42 (Supp.1994). Whether the defense of laches is applicable presents a mixed question of law and fact. *Freeman*, 457 S.W.2d at 611. The facts must establish negligence and unexcusable delay on the part of the party asserting a claim and some resulting prejudice or injury to the party pleading laches. *Id.* The resulting question of law is whether, in view of the facts, it would be inequitable or unjust to the defendant to enforce the party's right. *Id.* Prejudice includes the loss of evidence, expenditure of money, change of value, or a change of a party's right. *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn.Ct.App. 1990).

■ The evidence establishes that Ms. Archer delayed in asserting her right to arrearages and that she was negligent in doing so. Ms. Archer waited approximately five and one-half years to assert her claim to alimony arrearages. Yet, in her 1985 and 1987 petitions, she clearly and specifically set forth the provisions of the PSA with which she alleged Mr. Archer had failed to comply. Mr. Archer paid her the same amount of alimony per month. Ms. Archer was aware of her right to the arrearages. In response to Mr. Archer's question as to why she wait-

ed so long to ask for the alimony arrearages, she testified that she had been in court numerous times on issues arising out of the PSA and that she intended to get the alimony arrearage issue cleared up but that somehow the issue was never decided. Her petitions, however, reflect that she did not raise the issue of alimony arrearages until 1991. The specificity of Ms. Archer's prior petitions and her acquiescence in the alimony payments establish negligence. Her explanation is insufficient to justify the delay in asserting her right when she was aware of the right and had the opportunity to assert it.

■ Ms. Archer contends that Mr. Archer has not been prejudiced or injured by any alleged delay in asserting her right. Relying on *Livingston v. Livingston*, 58 Tenn.App. 271, 429 S.W.2d 452 (1967), Mr. Archer contends that he has suffered prejudice because he relied upon Ms. Archer's acquiescence to his payment and has forgone taking any court action to request a downward adjustment of alimony to accord with his payments. In *Livingston*, Mrs. Livingston filed an action against Dr. Livingston to recover one-half of the money that she had expended for support of the children after the divorce. The Court of Appeals held that Mrs. Livingston was guilty of laches and stated:

> Very probably Dr. Livingston and his solicitor agreed to a larger amount of alimony per month to Mrs. Livingston because of the fact that Dr. Livingston was being relieved of the child support. We think it most inequitable to require Dr. Livingston at this late date to reimburse Mrs. Livingston for a portion of the sums expended voluntarily by her for the support of the two children during the nine-year period when she had the unqualified right at any time to reopen the original case in the Trial Justice Court of Anderson County, Tennessee, and obtain an adjudication as to child support. (Citations omitted).

> For the same reasons we think Mrs. Livingston has been guilty of laches in waiting nine years to make claim on Dr. Livingston for contribution for child support. Dr. Livingston has been prejudiced by such delay because he too would have

had an opportunity to file a petition in the original case for adjustment downward of the alimony payments if Mrs. Livingston had made demand on him for contribution on the child support. (Citations omitted).
*Id.* at 458.

Dr. Livingston was not legally obligated under the PSA to pay the child support that Mrs. Livingston claimed. Dr. Livingston was prejudiced because he did not know or have any reason to know that Mrs. Livingston was going to assert a claim for child support and therefore, he could not go into court to ask for a downward adjustment to his alimony obligation. In contrast, Mr. Archer was and is legally obligated under the PSA to pay the cost-of-living increase. He knew that Ms. Archer had a legal right to the increase, and he therefore could have gone into court to ask for a downward adjustment to his alimony obligation. Indeed, from our review of the record, Mr. Archer did file a petition, in 1987, to reduce his alimony obligation. The prejudice that inured to Dr. Livingston did not inure to Mr. Archer.

Mr. Archer has not offered any other evidence or argument to support a finding of prejudice. The evidence in the record primarily consists of the testimony of the parties. Mr. Archer testified that he told Ms. Archer that he could not pay the cost-of-living increase. He testified that she told him in effect that it was "O.K." The substance and disposition of Ms. Archer's 1985 and 1987 petitions support Mr. Archer's testimony. Mr. Archer, however, did not testify that if Ms. Archer had not acquiesced in his behavior then he would have gone to court to reduce her alimony. Ms. Archer testified that she never told Mr. Archer that he did not have to pay the increase. Mr. Archer testified that he did not have money to pay the increase when he discussed the arrearages with Ms. Archer in 1985 or 1986. He further testified that he has not had the money to pay it since then. We fail to see how this testimony establishes prejudice, implied or otherwise. Loss of evidence is not at issue and there is no evidence that Mr. Archer has not expended any money that did not inure to his benefit because of Ms. Archer's delay in asserting her right. The record

before us does not reflect evidence that the Mr. Archer made any change of position or took any particular action to his detriment because of Ms. Archer's delay.

## ARREARAGE AMOUNT

Mr. Archer argues that the trial court erred in entering a final judgment in the amount of $56,068.02 for alimony arrearages. In her October 1992 petition, Ms. Archer alleged that Mr. Archer should have paid her $316,068.02 in alimony, including the cost-of-living increase, for the time period of February 15, 1984, through September 15, 1992. Mr. Archer introduced unopposed evidence that he paid Mrs. Archer $303,664.00 in alimony during this time. He contends that subtracting the amount paid from the $316,068.02 alleged due by Mrs. Archer leaves a total of $12,404.02 in alimony arrearages owed, not $56,068.02. Nothing in the record or the parties briefs explains this discrepancy. Ms. Archer only argues that the court's concurrence with the Master's recommendation is conclusive on appeal. Her argument is erroneous because the Special Master's finding, if he made one with regard to this issue, is unsupported by any material evidence in the record. *Coates v. Thompson,* 713 S.W.2d 83, 84 (Tenn.Ct.App. 1986). Mr. Archer's evidence was unopposed. We see no reason to remand this issue to the trial court. The parties have had ample opportunity to present evidence and argument on this issue. We therefore modify the court's order directing Mr. Archer to pay $56,068.02 in alimony arrearages to $12,404.02.

## CHILD SUPPORT

The trial court erred in denying Mr. Archer's request for child support. Parents are equally responsible for providing their children with the necessities of life. *Dalton v. Dalton,* 858 S.W.2d 324, 327 (Tenn. Ct.App.1993). There is nothing in the record to suggest to us that Ms. Archer should not be required to participate in the financial support of the parties' child. The court has the authority to order suitable support for the parties' minor child. T.C.A. § 36–5–101(a)(1) (Supp.1994). Furthermore, the

PSA does not provide that Ms. Archer will never be required to support her children through child support payments to Mr. Archer. As a general rule, an agreement for child support, whether labeled alimony or otherwise, that is incorporated into a divorce judgment is stripped of its contractual nature. The courts may exercise their continuing statutory powers to modify its terms when changed circumstances justify. *See Towner v. Towner,* 858 S.W.2d 888, 889–90 (Tenn.1993); *Penland v. Penland,* 521 S.W.2d 222, 224 (Tenn.1975); T.C.A. § 36–5–101(a)(1).

In determining the amount of child support to be paid by the noncustodial parent, courts shall apply the Child Support Guidelines (Guidelines) as a rebuttable presumption. T.C.A. § 36–5–101(e). Ms. Archer's monthly net income as evidenced by her affidavit of income and expenses is $1,064.58 per month, excluding alimony. Pursuant to the Guidelines, Ms. Archer must pay twenty-one percent of her net income for child support. Tenn.Comp.R. & Regs., ch. 1240–2–4–.03(5). The Guidelines, however, include alimony in the determination of an obligor's gross income. Tenn.Comp.R. & Regs., ch. 1240–2–4–.03(3)(a). Ms. Archer did not include alimony in her determination of gross income. There is not enough evidence in the record for us to determine the appropriate tax to be deducted from Ms. Archer's gross income. We therefore remand to the trial court with instructions to determine twenty-one percent of Ms. Archer's "net income" pursuant to the Guidelines. Mr. Archer is awarded child support retroactive from October 19, 1992, the date of entry of the consent order on temporary custody, until May 4, 1994, the date of the child's eighteenth birthday.

Before leaving this issue, we are compelled to address Ms. Archer's contention that Mr. Archer has never paid "a penny" of child support. This contention is totally unsupported by the evidence in the record. Ms. Archer herself testified that the Mr. Archer's payment to her was labeled alimony to allow him to take a tax deduction that would not have been available if the payment had been labeled child support. Furthermore, he has

been responsible for all of the tuition and educational expenses of the children, as well as their medical insurance and the majority of their medical expenses.

## ATTORNEY'S FEES

 The trial court erred in awarding $13,432.31 in attorney's fees to Ms. Archer. A court may award attorney's fees in custody and support proceedings. T.C.A. § 36–5–103(c) (Supp.1994). The Special Master recommended that Mr. Archer pay Ms. Archer's attorney's fees, finding that Mr. Archer's failure to abide by the terms of the PSA caused extensive litigation. So far as this may be a finding of fact, adopted by the trial court, it is unsupported by the evidence. The litigation involved in this appeal began in 1991 and was instituted by both parties. Mr. Archer paid at least some, if not all, of Ms. Archer's attorney's fees arising out of her prior petitions. The results of the present litigation are that Ms. Archer received alimony arrearages, Mr. Archer's alimony obligation is temporarily reduced, the contempt allegations against Mr. Archer have been dismissed, and he will receive child support from Ms. Archer for the parties' minor child. Mr. Archer's income and expense affidavit reflects a net monthly income of $2,136.08 and monthly expenses of $5,430.64, excluding accounting expenses. Excluding alimony, Ms. Archer's affidavit reflects a net monthly income of $1,064 and monthly expenses of $4,541.33. Neither party appears to be able to afford their own attorney's fees. The decision to award attorney's fees rests within the discretion of the trial court. *Sherrod v. Wix,* 849 S.W.2d 780, 785 (Tenn.Ct.App.1992). Since our review of this issue is *de novo,* the decision to award attorney's fees rests in our discretion. Given the issues and results of this litigation as well as the financial position of the parties, each party shall pay their own attorney's fees.

## CONTEMPT

 Ms. Archer contends that the court erred in denying her petition to hold Mr. Archer in contempt of court for failing to pay the proper amount of alimony. The court declined to find Mr. Archer in contempt of court because Ms. Archer allowed the husband's pattern of alimony payments to continue without contest. In Tennessee, there is no right to appeal from an acquittal in a contempt case. *Zwick v. Jones,* 589 S.W.2d 664, 666 (Tenn.Ct.App.1979); *Brewer v. Brewer,* 869 S.W.2d 928, 929 (Tenn.Ct.App. 1993). Accordingly, this issue is without merit.

Costs are assessed equally against the parties.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

CRAWFORD and HIGHERS, JJ., concur.