IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 16, 2000 Session

## REBECCA COLE-TURNER and JUDY SMITH v. CHRISTIAN PSYCHOLOGICAL CENTER

Direct Appeal from the Chancery Court for Shelby County
No. 102122-2;  The Honorable Floyd Peete, Chancellor

———

No. W1999-00707-COA-R3-CV - Filed October 4, 2000

———

This appeal involves a dispute over money Plaintiffs paid into a reserve fund while they were employed by Defendant Christian Psychological Center.  Plaintiffs believed that the money they contributed to the fund would later be refunded.  However, when Plaintiffs resigned from the Center and requested that the money be returned, the Center refused to return the money.  The Chancery Court held that Plaintiffs might be entitled to a refund of a portion of monies that they had paid into the reserve fund if the funds were not used by Defendant for ordinary and necessary operating expenses. The Chancery Court then referred the case to a Special Master for a determination of how the funds were spent by the Center.  The Special Master held that the Plaintiffs were not entitled to a refund, as the Defendant Center used the reserve funds for ordinary and necessary operating expenses.  For the reasons stated hereafter, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and LILLARD, J., joined.

Frank Deslauriers, Covington, for Appellants

Stephen H. Biller, Memphis, for Appellee

#### OPINION

#### Facts and Procedural History

The Plaintiffs in this case, Rebecca Cole Turner and Judy Smith, were employed by the Defendant Christian Psychological Center as staff psychologists.  Dr. Cole Turner began her employment in August of 1987 and Dr. Smith began in 1984. Prior to April of 1988, staff psychologists at the Center were paid based upon their billable hours, and they were also eligible for bonuses.  This compensation structure, however, led to a revenue shortfall at the Center.

Due to the revenue shortfall caused by the old compensation structure, a new system was devised in April of 1998 whereby each psychologist at the Center was required to pay into a "reserve" or "contingency" fund. The "reserve" or "contingency" fund was designated to provide for anticipated operating expenses. At first, from April 1988 through June 1989, each psychologist at the Center was required to pay $1,000.00 per month into the reserve fund. Later, the monthly amount psychologists were required to pay into the reserve fund was reduced to $400.00 from July 1989 through December 1989 and finally to $250.00 from January 1990 through December 1991.

Plaintiffs Turner and Smith claim to have been under the impression that the monies in the reserve fund would be refundable. As a result, when Plaintiffs Turner and Smith submitted their resignations on September 13, 1991, Plaintiffs asked for a return of all amounts they had paid into the reserve fund. The Defendant informed the Plaintiffs that the monies paid into the reserve fund were not refundable.

The Plaintiffs brought suit in Chancery Court in Shelby County claiming that they were entitled to recover monies that they had paid into the reserve fund. At the conclusion of trial, the chancellor determined that each Plaintiff had paid $22,000.00 into the reserve fund. The Chancellor further found that the Plaintiffs were not entitled to recover the first $7,500.00 of the money paid into the reserve fund. The trial court also determined that there was a unilateral mistake on the Plaintiff's part and that the Plaintiffs might be entitled to some recovery. However, the trial court found that Plaintiffs would not be entitled to any recovery if the Defendant Center could show that the funds were spent on necessary operating expenses. The trial court referred the case to a Special Master for a determination of how the reserve fund monies were spent. Specifically, the court directed the Master to examine the difference between the $7,500.00 and the $22,000.00 paid by each Plaintiff into the reserve fund. The parties appeared before the Special Master on March 10, 1998. The Special Master determined that the Plaintiffs were not entitled to a refund because the money paid into the reserve fund was used for the ordinary and necessary expenses associated with operating the Center. On July 14, 1998, the trial court entered its Order confirming the findings of the Special Master, and judgment for the Defendant Center was entered on September 17, 1999.

On appeal, Appellants present the following issues for our review: 1) whether the trial court erred in referring the matter of damages to a Special Master after the trial court found that a unilateral mistake had occurred; and 2) whether the trial court erred by failing to find that the Defendant was guilty of negligent misrepresentation.

**Standard of Review**

Since the trial court referred certain matters to the Special Master, our standard of review on appeal is affected. A concurrent finding of a master and a trial court is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. See Coates v. Thompson, 713 S.W.2d 83, 84 (Tenn. Ct. App. 1986). This standard of review is similar to our

standard when reviewing a jury verdict. We must affirm if there is any material evidence to support the trial court's concurrence. See id; see also T.R.A.P. 13(d).

## Analysis

First, the appellants assign error in that the trial court referred the matter of damages to a Special Master after the trial court found that a unilateral mistake had occurred. We find this argument to be without merit. In Archer v. Archer, 907 S.W.2d 412, 415-416 (Tenn. Ct. App. 1995), this court stated that the main issue of a controversy and the principles on which these issues were to be adjudicated should be determined by the court, and that subordinate and incidental issues and the determination of ancillary facts are matters properly to be referred to a Special Master. In the case *sub judice*, the Chancellor decided the main issue of controversy; whether the plaintiffs were entitled to any refund of monies that they had contributed to the Center's reserve fund. Only after the Chancellor found that the plaintiffs *might* be entitled to a refund depending on how the Center used the monies from the reserve fund did the Chancellor direct the Master to examine the ancillary issue of accounting. Specifically, the court ordered the Master to determine how the monies from the reserve fund were spent. The Chancellor stated in his order of reference to the Master, "The Court is of the opinion that if Defendant can show that the funds were spent as necessary expense of operations, there will not be any recovery. . . ." After the Special Master heard the matter, he stated in his ruling, "it is therefore the finding of the Special Master that the funds collected by the Defendant were spent as ordinary and necessary expenses of operations of the Christian Psychological Center." It is our opinion that the accounting issue was an ancillary matter properly referred to the Special Master. Moreover, the Special Master did not go beyond the trial court's order of reference in his decision. As a result, we must affirm the finding of the Special Master that all monies contributed by Plaintiffs to the reserve fund were spent for ordinary and necessary expenses. Therefore, the appellants are not entitled to a recovery on this basis.

The Appellants also assign as error the failure of the trial court to find that the Defendant Center was guilty of negligent misrepresentation. Appellants rely on Restatement of Contracts, 2d Edition, §161(b), which provides,

> A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only: . . . (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

The Appellants' reliance on the aforementioned section is misguided. First, the appellants have failed to prove that the Center knew all along that the monies contributed to the fund would not be refunded. In fact, the evidence in the record is clear that the issue was not decided until after Plaintiffs resigned from the Center. The only evidence present in the record is the Appellants' mere

assertions that the Board knew from the beginning that the monies paid into the fund would not be refunded. This is not sufficient to warrant overturning the decision of the trial court on this issue.

Second, we fail to find that any misrepresentations were made to the Appellants regarding the reserve fund. The record is filled with several hopeful statements by Appellants that the reserve fund money would be refunded to them. However, the record is devoid of any misrepresentations made to appellants. For example, at trial, when Plaintiff Cole Turner was asked about her conversations with Jenelle Reeves, the Center's business manager, regarding whether monies contributed to the reserve fund would ever be refunded, Cole Turner responded, "I was always very *hopeful*." (emphasis added).

Plaintiffs have conceded that no one ever told them that the monies contributed to the fund would eventually be refunded. When Ms. Cole Turner was asked, "Was there anybody from the Board of Trustees that indicated to you that the fund was refundable?", she responded, "No, no one indicated that it was refundable." Moreover, when Dr. Smith was asked, "Did any person in authority such as a Board Member or Dr. Elkin or even Dr. Stenberg of [sic] tell you that these operating funds were refundable?", Appellant Smith responded, "No. No clear answer was given." Finally, when Dr. Cole Turner spoke with Dr. Elkin, the Center's executive director, regarding the possibility of a refund, Dr. Elkin's response was, "It was the Board's discretion."

The Appellants failed to prove that anyone from the Center ever affirmatively represented to them that the money would be refunded. Moreover, we fail to find in the record that the Center acted unreasonably or in bad faith. It is unfortunate that Appellants made a mistake and wrongfully assumed that the monies they contributed to the reserve fund would later be refunded to them. However, just because the Plaintiffs believed or hoped or assumed that the monies in the reserve fund would later be refunded to them does not make their assumption legally operative. In the narrow circumstances of this case, we are of the opinion that no negligent misrepresentations were made to the Appellants. Therefore, we overrule the Appellant's assignment of error on this point and affirm the judgment of the lower court.

**Conclusion**

Accordingly, for the aforementioned reasons, we hereby affirm the trial court and dismiss this case. Costs on appeal are taxed to the Appellants, Rebecca Cole-Turner and Judy Smith, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-4-