IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 14, 2007 Session

## SAMANTHA D. REED v. FIRST HORIZON NATIONAL BANK, ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-04-2047     The Honorable Arnold Goldin, Chancellor**

---

**No. W2006-01597-COA-R3-CV - Filed April 17, 2007**

---

Appellant challenges the trial court's order adopting the Report of the Special Master, dismissing her case, and authorizing foreclosure proceedings. We affirm**.**

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Samantha D. Reed, Pro Se

R. Mark Glover and Kristine L. Roberts of Memphis, Tennessee for Appellees, first Horizon National Bank, Mike Lowery, C. W. Rutledge, Kara Bradley, Matt Neel, Jerry Baker, the Money Center, first Tennessee Bank NA

**OPINION**

### I.     Facts and Procedure

On August 15, 2000, Samantha Reed ("Ms. Reed," "Appellant") entered into a loan agreement with First Tennessee Bank National Association ("First Tennessee," "Appellee") through its First Horizon Money Center division, in the amount of $55,859.77. The loan was secured by Ms. Reed's residence located at 1892 East Person Avenue, Memphis, Tennessee. Ms. Reed's loan was made payable in 180 monthly payments of $691.77 due on the 15th of each month. At the time of entering into the loan, Ms. Reed opted to purchase credit life and credit disability insurance, procured through American General Assurance Company ("American General"), and unemployment insurance, procured through American Bankers Insurance Company of Florida ("American Bankers"). The premiums for the insurance coverage were financed by the loan.

From September 2000 through April 2001, Ms. Reed made her monthly payments, with three payments past due. In May 2001, Ms. Reed submitted an unemployment insurance claim to American Bankers, which in turn made the next twenty of Ms. Reed's loan payments, from May 2001 through December 2002, the maximum benefit allowable under the policy. Beginning January 2003, Ms. Reed began to be consistently past due on her loan payments. Ms. Reed made repeated late payments, partial payments, and missed payments.

In September 2003, Ms. Reed's loan was in serious default, and First Tennessee commenced foreclosure proceedings. At that time, Ms. Reed told the bank that she believed that the bank had failed to credit some of her payments to her loan account. Ms. Reed also promised to make payments on the loan. Therefore, First Tennessee stopped the foreclosure process in order to allow Ms. Reed an opportunity to pay the balance due on the loan as well as to investigate Ms. Reed's allegations of missing payments. In October 2003, Ms. Reed made sufficient payments to bring the loan up to date.

In November 2003, Ms. Reed again fell behind in her payments. First Tennessee investigated Ms. Reed's allegations of missing payments and determined that their accounting records reflected all of the payments received from Ms. Reed. The bank provided Ms. Reed an opportunity to provide any evidence that she might have of errors in the account. In response, Ms. Reed sent copies of cancelled checks that she contended had been misapplied. On March 16, 2004, First Tennessee notified Ms. Reed by letter that all of the checks had been reviewed and that all payments had been properly credited to her loan account.

By late summer 2004, Ms. Reed's loan was again in serious default. First Tennessee again pursued foreclosure proceedings. On October 13, 2004, Ms. Reed filed suit against First Tennessee, First Horizon National Bank, the Money Center, and five First Tennessee employees (Mike Lowery, C. W. Rutledge, Kara Bradley, Matt Neel, and Jerry Baker). In her complaint, Ms. Reed alleges that First Tennessee failed to credit payments that she allegedly made on her loan, failed to properly maintain her loan account, and, as a result of these alleged errors, wrongfully initiated foreclosure proceedings. First Tennessee and the other named defendants filed an answer denying Ms. Reed's claims, and First Tennessee filed a counterclaim alleging that Ms. Reed had defaulted on her loan.

On March 23, 2005, the chancery court entered an Order of Reference referring the case to a Special Master, Deborah Henderson. The court appointed the Special Master to take and receive evidence, to make findings on Ms. Reed's allegations that First Tennessee had failed to credit payments made by Ms. Reed, and to furnish a report to the court. Both parties submitted information to the Special Master for her review, and a hearing was held on August 25, 2005 to determine the merits of Ms. Reed's claims. Both parties were given an opportunity to present evidence which supported their respective positions.

On April 17, 2006, the Special Master filed her Report of Special Master with the chancery court, which states in part:

**FINDINGS**

On the 25th day of August, 2005, the Special Master conducted a hearing and received evidence on the issues as directed. A transcript of the hearing has been filed herein.

It appears from the testimony of the Plaintiff (and no objection from the Defendants) that Plaintiff kept her payments regular, although not necessarily on time, from September 15, 2000 through April 15, 2001. Thereafter, Plaintiff became unemployed. However, beginning May, 2001, and continuing through December 15, 2002, mortgage payments were made on Plaintiff's behalf by her insurance company, American Bankers. The insurance company, pursuant to their contract, paid a total of twenty (20) payments and kept the mortgage current through January 15, 2003.

According to First Tennessee Bank, neither Plaintiff nor her insurance company paid a mortgage payment for the month of January 2003. Plaintiff disputes the allegation and claims that the insurance company made the payment for her. She testified during the hearing that she had a letter from her home which proved they had made the payment for her and promised to forward a copy of the letter to your Special Master as well as to the bank. No such letter has ever been sent. The testimony thereafter was that a payment in the amount of $692.00 was made on February 27, 2003 by the Plaintiff. Said payment was used to satisfy the January obligation which still left February 2003 and the late fee for January 2003 due and owing. A payment in the amount of $692.00 was paid on March 21, 2003 which was applied to February 2003, leaving a balance of $69.15 in late fees plus the regular March note due. According to First Tennessee, this pattern continued for the months of April and May, 2003, with no attempt by Plaintiff to pay the past due amounts. Obviously, if Plaintiff could have produced any evidence that either she or her insurance company made the January 2003 payment, all of the late charges and additional interest charged would be refunded to Plaintiff's account.

In June 2003, the second disputed payment scenario arose. First Tennessee Bank does not have a payment recorded during that month. Plaintiff alleges that she paid in cash at a First Tennessee branch location. Plaintiff had no receipt for the payment and claimed that she had one at home but that it is not legible and therefore she cannot produce it. Exhibit C which is attached hereto is a breakdown of the payments that were due, payments made and late fees which

were added to each month between February 2003 and March 2004. On September 15, 2003, Plaintiff made a lump sum payment of $1700.00 which was applied to her June, July and August 2003 payments and their respective late fees. In October, 2003, a lump sum payment of $1300.00 was made and applied to September and October 2003 payments. This payment brought Plaintiff up to date until November 15, 2003 when the next regular payment would have been due. Unfortunately, Plaintiff did not make another payment until December 15, 2003, and the payment was for only $692.00. That amount was applied to November 2003, leaving a late fee for November 2003, plus the December 2003 payment due. The late fees began to accumulate again. Plaintiff also made a partial payment in January 2004 (only $600.00). Since October 2003, up to June 2005 a total of $3598.49 had accumulated and was due to First Tennessee Bank. However, since that time additional amounts may have accumulated. Shortly after the hearing in this case, after being advised that the Special Master could not find any errors in the payment history submitted by First Tennessee Bank, Plaintiff filed an action in the United States Bankruptcy Court (Case Number 05-35185) to delay the possibility of Chancery Court dismissing her Complaint.

Plaintiff alleged Defendant First Tennessee Bank cancelled her insurance and at one point stated that she did not believe [sic] ever purchased the insurance she paid for. However, Plaintiff utilized the unemployment insurance during the first twenty (20) months she was unemployed. There is no question that her premiums were used to purchase unemployment insurance. The only time credit life insurance would be appropriately used is if Plaintiff died. Your Special Master asked counsel for Defendant, First Tennessee Bank, to furnish proof that the insurance existed. A copy of the Certificate of Insurance was provided to your Special Master and is attached hereto as Exhibit D.

## RECOMMENDATIONS

Your Special Master was satisfied, after a complete review of the evidence presented at the hearing, Plaintiff has no proof to support her allegations that First Tennessee Bank failed to record any payments, neither has Plaintiff established any errors made by First Tennessee bank in her payment history. Your Special Master believes Plaintiff has been abusing her privileges in the judicial system to prolong moving from her home. Whenever one forum gave

Plaintiff an indication she may not prevail, she would move to another forum with the same issues. Plaintiff long ago understood that she could not prove her allegations. Yet she has continued to file complaints against the bank in any forum that she believed would take the time to listen, sometimes attempting to litigate in two forums at one time. This is simply evidence of Plaintiff's bad faith.

Your Special Master recommends that the original Complaint filed by the Plaintiff be dismissed **against all named Defendants, at Plaintiff's cost,** and that Plaintiff be enjoined and restrained from destroying any portion of the real property during the course of any foreclosure sale. It is further recommended that a portion of the relief as requested by First Tennessee Bank National Association in its Counter-Claim be granted, i.e. that the bank be granted permission from the Court to proceed with its foreclosure procedures if still necessary. Your Special Master does not recommend that the Court grant a judgement against the Plaintiff in favor of First Tennessee Bank National Association for the balance of the mortgage due as requested, because said mortgage balance can be obtained from a sale of the property. Certainly, IF the court deems a judgement against the Plaintiff for attorney fees appropriate, your Special Master recommends that it be granted.

On July 20, 2006, the chancery court held a hearing on the Report of the Special Master. The Special Master was present and testified about the hearing that she held on the matter. The Special Master testified that she had verified that all loan payments made by Ms. Reed had been properly applied. The Special Master explained that because Ms. Reed had missed various payments, made late payments, and made partial payments, some payments that she did make went solely to interest and not to principal, causing the principal balance on Ms. Reed's loan to remain the same after those payments had been made. Ms. Reed was also given an opportunity to present evidence at this hearing.

On July 26, 2006, the chancery court entered its Order Adopting Report of Special Master and Dismissing the Case. The order states in pertinent part:

It further appears to the Court that the findings and recommendations set forth in the Report of Special Master are supported by the evidence and that Plaintiff has produced no proof to the contrary. It further appears to the Court that Plaintiff concedes that she has made no payments on the loan at issue for at least one year. As such, the Court hereby adopts the Report of Special Master in full with the sole exception that the Court declines to adopt the Special Master's recommendation that First Tennessee be awarded its attorneys fees.

-5-

It is therefore ORDERED, ADJUDGED, AND DECREED that the Report of Special Master is ADOPTED AND APPROVED IN FULL with the sole exception that the Court declines to award attorneys fees to the Defendants.

It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff's Complaint against all named Defendants and First Tennessee Bank National Association's ("First Tennessee's") Counterclaim against Plaintiff are hereby DISMISSED WITH PREJUDICE.

It is further ORDERED, ADJUDGED, AND DECREED that First Tennessee is authorized to initiate foreclosure proceedings thirty (30) days after this Order becomes final.

It is further ORDERED, ADJUDGED, AND DECREED that Plaintiff is enjoined and restrained from destroying any portion of the real property from the present day through and including the course of foreclosure proceedings.

It is further ORDERED, ADJUDGED, AND DECREED that all court costs are assessed against Plaintiff for which let execution issue if necessary.

## II.    Issues

Ms. Reed appeals and presents the following seven issues, as stated in her brief, for review:

1. Should the report of the Special Master be upheld the fact-findings contradicts [sic] the transcripts of the hearing?
2. Did the Trial Court Erred [sic] by not allowing the (2) [sic] additional payment histories filled with errors and inconsistences of the bank not to be taken as evidence to support the Appellant's Complaint of Breach of Contract?
3. Did the Trial Court erred [sic] by not allowing the bank's own counsel statements of admitting liability in support of Appellant's Complaint of Breach of Contract?
4. Did the Trial Court judgment [sic] be upheld when the Appellant established the bias from the previous Chancellor when the case was reassigned to another Chancellor on Oppression, suppression of evidence and concealed statements and to support Appellant's Breach of Contract?

5. Did the Trial Court err to [sic] enforce a foreclosure when the balance remained the same showing a breach and by separating the agreement from the Deed of Trust in holding Appellant Breach of a Deed [sic]?

6. Is four years-considered [sic] reasonable time when a breach has occurred by the Mortgage holder who refuses to properly correct an account?

7. Should the security interest of an agreement be voided as well as the deed when the breach was excessive by the Appellee.

We perceive many of Ms. Reed's issues to overlap, and therefore, we restate Ms. Reed's stated issues as the following three issues:

1. Whether the trial court erred when it adopted the Special Master's finding that Ms. Reed has no evidence to support her allegations that First Tennessee Bank National Association failed to record payments and to properly maintain her loan account;

2. Whether the trial court erred when it allowed First Tennessee to initiate foreclosure proceedings against Ms. Reed; and

3. Whether the record supports Ms. Reed's allegations that the trial court was biased against her and failed to admit evidence that she presented.

## III. Analysis

The trial court's order referencing this matter to a Special Master, the Special Master's report, and the trial court's order adopting the Special Master's report affect our standard of review on appeal. A concurrent finding of a master and a trial court is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. *Archer v. Archer*, 907 S.W.2d 412, 415 (Tenn. Ct. App. 1995); *Barham v. Cooper,* 1997 WL 542922, at *7 (Tenn. Ct. App. Sept. 5, 1997). This standard of review is similar to our standard when reviewing a jury verdict; we must affirm if there is any material evidence to support the trial court's concurrence. *See Coates v. Thompson*, 713 S.W.2d 83, 84 (Tenn. Ct. App. 1986); Tenn. R. App. P. 13(d).

To begin, Ms. Reed argues that the trial court erred in finding that Ms. Reed had no evidence to support her allegations that First Tennessee failed to record payments and to properly maintain her loan account. Ms. Reed argues that First Tennessee provided her with inaccurate payment histories regarding her loan account and that First Tennessee failed to properly record payments that she made. Both the Special Master and the chancery court provided Ms. Reed with repeated opportunities to present evidence supporting her claims. However, the record in this case does not include any such evidence. Ms. Reed's argument focuses on account histories in which the balance on the loan remained the same after payments were made. However, the record reflects that Ms. Reed's loan is an amortized loan in which a portion of each payment goes to interest and a portion to principal. The Special Master testified that when amortized loans become in default, any payments received are applied to the outstanding interest, often resulting in the balance staying the

same. The record reflects that Ms. Reed did in fact miss payments, resulting in the payments that she did make being applied solely to interest, rather than to the principal amount due. The evidence in this case clearly supports the finding that there was no evidence that First Tennessee failed to properly credit Ms. Reed's payments or failed to properly maintain Ms. Reed's loan account, and Ms. Reed failed to produce any evidence to support any other conclusion.

Ms. Reed also argues that the trial court erred when it granted First Tennessee permission to initiate foreclosure proceedings against Ms. Reed. Foreclosure proceedings may be initiated after a party has defaulted on a mortgage loan. *See* T.C.A. § 47-9-601. Here, the evidence clearly indicates that Ms. Reed was in default. Ms. Reed admitted in both the hearing of the Special Master and the chancery court hearing that she had missed payments, made partial payments, and had made late payments. In fact, Ms. Reed admitted that she had not made a single payment on her loan for over a year. The record clearly supports the trial court's findings that Ms. Reed was in default and that First Tennessee could initiate foreclosure proceedings against Ms. Reed.

Finally, Ms. Reed argues that the trial court was biased against her and failed to admit evidence that she presented. Ms. Reed argues that the Special Master did not allow her to submit evidence and present her case and that the Special Master was delayed in filing her Report of the Special Master. Further, Ms. Reed argues that the original chancellor assigned to her case, Chancellor Goldin, was biased because he ruled against Ms. Reed on a number of rulings. Again, we find Ms. Reed's arguments to be without merit. There are repeated instances in the transcript of the hearing before the Special Master in which Ms. Reed was given multiple opportunities to present any evidence supporting her arguments. We find no evidence that the Special Master acted with any bias or prejudice against Ms. Reed in any manner. Further, there is no evidence in the record that Chancellor Golden acted with any bias in making initial rulings in this matter. Ms. Reed's argument that the rulings were not in her favor is simply not enough to establish bias.

## IV. Conclusion

The chancery court's order adopting the Report of the Special Master is fully supported by the evidence in this case, and the decision of the trial court is affirmed. Costs of this appeal are assessed against the Appellant, Samantha D. Reed, and her surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-8-