# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 25, 2012 Session

## DANNY GRUBBS DODD v. JUDITH GAIL PARIS DODD

**Appeal from the Circuit Court for Sumner County**
**No. 2011CV413     C. L. Rogers, Judge**

---

### No. M2012-00153-COA-R3-CV - Filed January 9, 2013

---

In this divorce proceeding, Husband appeals the trial court's award of alimony *in futuro* to Wife.  Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**;
**Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

S. Jason Whatley, Sr., Columbia, Tennessee, for the Appellant, Danny Grubbs Dodd.

Bruce N. Oldham and Sue Hynds Dunning, Gallatin, Tennessee, for the Appellee, Judith Gail Paris Dodd.

## OPINION

### I. Facts and Procedural History

Danny Dodd ("Husband") and Judith Dodd ("Wife") were married on December 5, 2002.[1]  Throughout the marriage, Husband owed and operated several businesses and Wife worked as a substitute teacher and teacher's aide at a local elementary school.  When the parties married in 2002, Husband was the owner and operator of Easy Tree Service. In 2004, Husband sold Easy Tree Service and purchased a second business, Walton Ferry Storage. In June 2010, Husband sold Walton Ferry Storage; in August of that year he purchased land and built his next business, Dodd's Country Store.

---

[1]  Husband and Wife had been married to each other once before; they had two children together during the first marriage.

On April 8, 2011, Husband filed a complaint for divorce alleging that Wife was guilty of inappropriate marital conduct. Wife answered and counter-sued for divorce on the grounds of inappropriate marital conduct, adultery, and irreconcilable differences.

On September 19 Wife filed a Petition for Contempt alleging that on May 13, 2011, Husband purchased a residence in Buchanan, Tennessee, which he had titled in the name of Dodd's Country Store and encumbered other marital assets in violation of the injunction issued at the filing of the divorce complaint.

After a trial, the court issued its Final Decree of Divorce on December 14 dismissing Husband's complaint, granting Wife a divorce on the grounds of adultery and dividing the marital assets and debts. In addition, the court determined that Wife was economically disadvantaged and awarded her alimony *in futuro* of $3,156 per month. The court also found Husband in wilful contempt of court for violations of the statutory injunction required by Tenn. Code Ann. § 36-4-106(d); the court also awarded Wife a judgment for attorney fees.

Husband raises one issue on appeal: Whether the trial court erred in awarding alimony *in futuro* under the facts of this case and whether the amount of that alimony, regardless of classification, was improper and an abuse of discretion. Wife requests her attorneys' fees on appeal.

## II. Discussion

### A. Alimony *in Futuro*

Husband contends that the trial court abused its discretion in awarding alimony *in futuro* and in setting the amount of support at $3,156 per month. Husband argues that there was no evidence indicating whether Wife could "rehabilitate herself" or had made any "reasonable efforts" to do so, no evidence indicating the standard of living during the marriage, and no evidence of Husband's ability to pay alimony. Further, Husband contends that the court misapplied the factors at Tenn. Code Ann.§ 36-5-121(i).

Trial courts have broad discretion to determine whether spousal support is needed. *See Garfinkel v.Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Alimony decisions require a careful balancing of the factors in Tenn. Code Ann.§ 36-5-121(i); the two most important factors are the need of the disadvantaged spouse and the obligor's ability to pay. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). Once the trial court has determined that alimony is appropriate, it must determine the nature, amount, and period of

the award.[2] Our legislature has stated a public policy preference for temporary, rehabilitative spousal support over long-term support.  Tenn. Code Ann. § 36-5-121(d)(2).  The proper legal standard for awarding alimony *in futuro* was set forth in *Gonsewski v. Gonsewski* as follows:

> [A]limony *in futuro* is intended to provide support on a long-term basis . . . where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible."  Alimony *in futuro* is appropriate when "the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107–08 (Tenn. 2011) (citations omitted).

Ruling from the bench, the court stated:

> [Wife is] certainly economically disadvantaged. . . .  She's 56, She's a teacher's assistant at school. . . . I think her net pay after tax and health insurance is a little over $400 a month.  She raised the boys.  She was the homemaker.  The husband was out earning a living.
>
> My understanding is she has a high school education.  She attempted a little schooling, but her work history, her training . . . no way she will approach any semblance of what the life style was while she was married; nor will she do much better than 447 a month; and third, when a husband goes out, commits adultery, almost dissipates assets for the wrong reasons, it just sort of nags at me for the first thing to come out of their mouth is, well, they can go to work.  That doesn't add up. . . .
>
> So economically disadvantaged, nothing was shown that there's any training we could give to her over the next six years before she's at least eligible for social security that's going to make a hill of beans difference.  Without any kind of proof like that, based on what I know and from what I did know, I'm not finding she's trainable.

---

[2] The court may award rehabilitative alimony, alimony *in futuro*, transitional alimony, alimony *in solido* or a combination of these.  Tenn. Code Ann. § 36-5-121(d)(1).

The court also made specific findings with respect to the evidence about Husband's ability to pay and his credibility:

> Now, the Court was not presented one iota of proof about what his monthly expenses are. The wife certainly showed her need. The husband was claiming he doesn't have the ability to pay, but never, nothing in the record shows his monthly expenses. . . . Now, I also know you're living in a $325,000 house, and I'm not going to let you hide behind that mortgage payment and claim I can't pay alimony because I'm got this mortgage payment on a house that I bought in violation of the order.
>
> . . . I'm amazed that in an alimony case I cannot have an exhibit that says here's my monthly necessary expenses to prove that you can't pay it. So I find that there's absolutely no credible proof showing that he does not have the ability to pay, taking into consideration that he's not going to hide behind a 5,000 square foot house purchased in violation of a statutory injunction, say that, and the absence of proof.
>
> ***
>
> Wife certainly needs to be brought up to some reasonable standard of prior to the divorce or at least the amount that the husband will have. And, again, the husband indicates, the best I can tell -- it never did come down to what his monthly income gross was. He gave us a business summary from April to October and says I pay out 90-something thousand dollars in salary to my son and all these other people that work there. Interesting. Maybe if he's as broke as he says he is, it's interesting he can pay that many people to maintain his business on a 7-day, 24-hour time frame. Secondly, I hear his mortgage payment is being paid by the company. . . .
>
> So his own lack of proof prevents the Court from giving any credibility, even if he did try to say this is what he grossed each month. . . . And, again, I've plowed this ground, no proof of what monthly expenses are, so any attempt to say he can't pay alimony, based on what I previously said, falls flat on the Court's ear due to lack of evidence or appropriate evidence.

Using Wife's income and expense statement, the court calculated Wife's need to be $3,375 and awarded her alimony *in futuro* in the amount of $3,156 per month.

Appellate courts are disinclined to second-guess a trial court's decision regarding spousal support unless the decision is not supported by the evidence or is contrary to public policy. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). In *Gonsewski*, our Supreme Court stated that the role of appellate courts in reviewing an award of alimony is "to determine whether the trial court applied the correct legal standard and reached a decision

that is not clearly unreasonable."[3]  *Gonsewski*, 350 S.W.3d at 105 (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)).  When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R.App. P. 13(d); *Bogan*, 60 S.W.3d at 727; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).  "Because the trial judge is in the best position to assess the credibility of the witnesses, such credibility determinations are entitled to great weight on appeal." *Burden v. Burden*, 250 S.W.3d 899, 905 (Tenn. Ct. App. 2007).

There is substantial evidence in the record to support the court's determination that Wife could not be rehabilitated and could not establish the standard of living she enjoyed during the marriage; Husband has not cited to evidence that preponderates against the court's findings in that regard.

The proof showed that Wife was fifty-six years old and had worked in a local public school as a substitute teacher and teacher's aide since 1998.[4]   Wife testified that she completed high school and attended some college.  Wife stated that her only other work experience was when she worked in several restaurants, banks, and department stores. Wife's income and expense statement was entered into evidence showing a monthly income of $447 and monthly expenses of $3,825.18.  With respect to the standard of living enjoyed by the couple during the marriage, the evidence showed that the couple lived in a 6,000 square foot home, owned and enjoyed vacations at several time shares, and that Husband purchased Wife a new vehicle for her birthday.

The proof also showed that Husband is self-employed and runs a convenience store and restaurant he opened in 2010.  Husband introduced a profit and loss statement for the business showing a net loss of $8,253.40 between January and October of 2011, and testified that he did not draw a salary from the business.  Also admitted into evidence was a profit and loss statement that Husband used to secure the loan for his Henry County home; this statement listed the store's net income as $105,328.76 for the period of February 22 through April 30.  On cross examination, Husband admitted that he could manipulate the various expenditures in the computer program used to produce the profit and loss statement, although

---

[3] "Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski*, 350 S.W.3d at 105–06.

[4] Wife testified, "I was parent volunteer and such as that when my kids were [attending the school], and then when my youngest started school, that's when I started substitute teaching." Wife began substitute teaching in 1998; after the parties married in 2002, she took a full-time position as a teacher's aide.

-5-

he denied having done so. Husband did not admit into evidence or produce his individual or business tax return for 2010.

The trial court applied the correct legal standards in awarding alimony *in futuro* by determining that Wife was economically disadvantaged and was not capable of rehabilitation as well as in its application of the factors found in Tenn. Code Ann.§ 36-5-121(i).[5] Further, the amount of alimony awarded was supported by Wife's testimony as well as her income and expense statement, and the amount of the award was not clearly unreasonable; consequently, we decline to substitute our judgment for that of the trial court.[6] We affirm the court's award of alimony.

## B. Attorneys' Fees on Appeal

As the economically disadvantaged spouse, Wife requests that she be awarded attorney's fees incurred in defending this appeal. An award of appellate attorney fees is within this Court's sound discretion. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In determining whether to award attorney's fees on appeal, we consider the ability of the party seeking the fee award to pay such fees, success on appeal, whether the appeal was taken in good faith, and any relevant equitable factors. *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005); *see* Tenn. Code Ann. § 36-5-103(c); *see also Bryant v. Bryant*, No. M2007-02386-COA-R3-CV, 2008 WL 4254364, at *9–10 (Tenn. Ct. App. Sept. 16, 2008). Considering these factors, we are of opinion that Wife is entitled to the fees she has incurred for this appeal and remand the case for a determination of the amount to be awarded.

### III. Conclusion

For the reasons set forth above, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE

---

[5] The statutory factors to be considered include: the relative earning capacity, obligations, needs, and financial resources of each party; the relative education and training of each party; the age and mental condition of each party; ability, opportunity and necessity of each party to secure education and training in order to improve the party's earning capacity to a reasonable level; and the assets of each party, whether they be separate assets or marital property awarded in the divorce. Tenn. Code Ann. § 36-5-121(i).

[6] We give great weight to the trial court's finding that Husband lacked credibility, which finding was based in large part on Husband's failure to provide documentation of his income and monthly expenses.