IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 22, 2008

**CATHERINE SMITH**

v.

**SALLY BRITTINGHAM SMITH and JOHN MICHAEL CHARLES SMITH**

**Appeal from the Circuit Court for Davidson County**
**No. 05D-2508     Carol Soloman, Judge**

---

**No. M2006-01806-COA-R3-CV - Filed September 24, 2008**

---

This is an appeal from an order joining a third party in a divorce action. During the husband and wife's marriage, husband's mother gave the couple a substantial amount of money. The wife filed for a divorce in circuit court. Soon after, the husband's mother filed a lawsuit in chancery court against the husband and wife, alleging breach of an agreement to repay the funds and to grant her a security interest in the marital home. Simultaneously, she filed a lien *lis pendens* on the marital home. The marital home was sold, and the chancery court transferred the husband's mother's lien *lis pendens* to the proceeds of the sale. The husband allowed a default judgment to be taken against him in his mother's chancery court lawsuit. Subsequently, the circuit court granted the wife's motion to join the husband's mother in the divorce proceedings as a necessary party. Thereafter, the chancery court case was transferred to the circuit court. The circuit court held a trial on the merits; it found no agreement by the wife to repay the monies given to the couple by the husband's mother, and dismissed her claim against the wife. The husband's mother was awarded damages against the husband for the full amount of the money loaned, to be paid out of his share of the proceeds from the sale of the marital home. The circuit court's distribution of the martial estate, however, effectively eliminated his share of the proceeds. The husband's mother appeals, arguing that she was improperly joined in the divorce action, and that the circuit court did not give proper effect to her lien *lis pendens* against the proceeds from the sale of the marital home. On appeal, we affirm, finding that the joinder was proper and finding no error in the application of the lien against the husband's share of the proceeds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., concurred; W. FRANK CRAWFORD, J., did not participate.

Joel H. Moseley, Sr., Nashville, Tennessee, for the appellant, Catherine Smith

Grant C. Glassford, Franklin, Tennessee, for the appellee, Sally Brittingham Smith

**OPINION**

Appellee Sally Brittingham Smith ("Wife") and Appellee John Michael Charles Smith[1] ("Husband") were married. Over a nearly five-year period between February 2000 and December 2004, during the parties' marriage, Husband and Wife received numerous payments totaling over $250,000 from Husband's mother, Appellant Catherine Smith ("Mother-in-law"). Husband was out of work during some or all of this time period, and the monies were used to pay family living expenses, including mortgage payments on their marital home.

In July 2005, Wife filed a complaint for divorce against Husband in the Circuit Court for Davidson County, Tennessee. In the complaint for divorce, Wife sought, *inter alia*, an equitable distribution of the parties' marital property, including the parties' marital home. An agreed order was entered, in which Husband agreed to keep current the mortgage payments on the home.

In September 2005, Mother-in-law filed a lawsuit against Husband and Wife in the Chancery Court for Davidson County, Tennessee. In Mother-in-law's complaint, she alleged that the monies she had given to the couple were loans. She asserted that Husband and Wife agreed to repay the amounts loaned, and that they agreed to secure the loan by granting Mother-in-law a security interest in the marital home. Mother-in-law alleged that the agreed monthly payments had not been made, and that Husband and Wife had taken no steps toward granting her the promised security interest. Mother-in-law contended that Husband and Wife had agreed to use a portion of the amounts loaned to satisfy a second mortgage on the marital home, that this was not in fact done, and that the second mortgage remained an encumbrance on the property.

Based on these alleged facts, Mother-in-law's complaint asserted claims for breach of an oral agreement to grant a security interest in the marital home and for breach of an oral agreement to repay the loans. Mother-in-law sought an award of damages, an order requiring Husband and Wife to execute a security agreement in her favor as to the marital home, and an injunction against sale of the residence. On the same date that the lawsuit was filed, Mother-in-law filed an abstract of her complaint with the register's office pursuant to Tennessee Code Annotated § 20-3-101,[2] giving notice of her lien *lis pendens* on the parties' marital home.

---

[1] Mr. Smith is also referred to as "Michael John Charles Smith" in parts of the briefs and the record.

[2] Section 20-3-101 states:

When any person, in any court of record, . . . shall seek to fix a lien lis pendens on real estate, or any interest therein, . . . that person shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to such suit, a description of the real estate affected, its ownership, and a brief statement of the nature and amount of the lien sought to be fixed.

T.C.A. § 20-3-101(a) (1994).

In October 2005, in the divorce litigation in Circuit Court, Wife filed a motion to sell the marital home. The motion was granted, and Wife listed the marital home with a real estate agent. Soon a buyer was found and a contract of sale drawn up.

On November 18, 2005, in the litigation filed by Mother-in-law against Husband and Wife, the Chancery Court entered an agreed order allowing the immediate sale of the marital home. The Chancery Court ordered that the proceeds of the sale be held in escrow, removed the lien on the home, and transferred the lien *lis pendens* to the proceeds from the sale.

The marital home was sold shortly thereafter, on November 21, 2005 for $580,000.00. Because Husband had failed to comply with the order requiring him to keep the mortgage payments on the home current, the proceeds realized upon the sale were reduced by $17,958.22, the amount necessary to bring the payments current on the first and second mortgages on the home.

Meanwhile, in the Chancery litigation, Husband had not filed a response to Mother-in-law's complaint. Mother-in-law filed a motion for default judgment against her son, Husband. On December 12, 2005, the Chancery Court granted the motion, stating explicitly that Mother-in-law was granted a default judgment only as to Husband, and only as to liability, with the amount of the default judgment to be determined at a later hearing.

On December 2, 2005, in the divorce litigation in Circuit Court, Wife filed a motion pursuant to Rule 19.01[3] of the Tennessee Rules of Civil Procedure to join Mother-in-law as a necessary party to the divorce proceedings. In the Chancery Court litigation, Wife filed a motion for dismissal of Mother-in-law's complaint or transfer to the Circuit Court. Mother-in-law filed a response in Circuit Court opposing Wife's motion for joinder, arguing that joinder under Rule 19.01 was unnecessary and inappropriate. The Circuit Court disagreed with Mother-in-law. On December 20, 2005, it granted Wife's motion for joinder, noting that Mother-in-law had claimed an interest in the equity realized from the sale of the marital home, and finding, accordingly, that joinder under Rule 19.01 was proper.

Mother-in-law also filed a response in the Chancery Court litigation opposing Wife's motion for dismissal of her lawsuit or transfer to Circuit Court. Upon learning that the Circuit Court had

---

[3]Rule 19.01 states, in pertinent part:

> A person who is subject to service of process shall be joined as a party if . . . the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

Tenn. R. Civ. P. 19.01.

ordered that Mother-in-law be joined in the divorce action, the Chancery Court entered an order transferring Mother-in-law's lawsuit to the Circuit Court. The Chancery Court directed that the order of transfer be made a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, there being no just reason for delay.

After being forcibly joined as an involuntary plaintiff in the divorce action, Mother-in-law filed a motion with the Circuit Court asking to be dropped from the suit pursuant to Rule 21 of the Tennessee Rules of Civil Procedure.[4] She requested that the Circuit Court's order on her motion be made a final judgment pursuant to Rule 54.02. The Circuit Court denied Mother-in-law's request to be dropped from the divorce action, and entered its order as a final judgment, finding no just reason for delay. *See* Tenn. R. Civ. P. 54.02.

On February 24, 2006, Mother-in-law filed two notices of appeal. She appealed the Chancery Court's order of transfer and the Circuit Court's order denying her request to be dropped from the divorce action, both of which had been entered as final judgments. On May 8, 2006, Mother-in-law voluntarily dismissed both appeals,[5] and the divorce action proceeded to trial with Mother-in-law as a party-plaintiff.

The Circuit Court held a bench trial on July 17 and 20, 2006. Mother-in-law testified at the outset of the trial, primarily discussing the monies she paid to Husband and Wife during the five-year period between February 2000 and February 2005. Mother-in-law submitted approximately sixty cancelled checks into evidence indicating that, in total, she gave the parties $280,671.08 during that period of time. Most of the checks were made payable to her son, Husband, and the remainder were made payable to various retailers, credit card companies, and a mortgage company. None were made payable to Wife. Mother-in-law explained that she made these payments because Husband had been out of work and she wanted to help Husband and Wife meet family expenses.

Mother-in-law testified that she considered the payments to Husband or to the parties' creditors to be loans for which she would eventually be repaid. She conceded, however, that the only conversation she had with either party about the terms of repayment was a brief discussion with Husband in which they decided that Husband would simply pay Mother-in-law whatever amount he could afford on a monthly basis.

---

[4]Rule 21 states:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Tenn. R. Civ. P. 21.

[5]Mother-in-law's decision not to seek or obtain interlocutory review does not limit the scope of our review in this appeal. Tenn. R. App. P. 9(a).

Mother-in-law described a meeting on October 8, 2002, with Husband, Wife, and Dotsy Brittingham, who is Wife's mother. The purpose of the meeting was to discuss Husband and Wife's increasing financial problems. Mother-in-law described the discussion in the meeting about the amounts that she had given to Husband and Wife:

> Q (by Mother-in-law's counsel): Ms. Smith, did [Wife] tell you on October 8th that she was going to pay you back the money that you loaned?
> A (by Mother-in-law): No, she didn't come out and say that.
> Q: What did she say?
> A: It was agreed among us that they would repay this.
> Q: When you say agreed among us, how is that different than [Wife] saying it?
> A: Well, I don't think she actually said, I will repay these. She did not.
> * * *
> Q: Who actually talked with you about these loans?
> A: Well, all four of us talked, but basically it was my son Michael and me. I believe [Wife's] mother said some things, too.
> Q: But as far as the loan discussion, who actually discussed with you the particulars?
> A: My son did.

Mother-in-law testified that, although prior to the October 8 meeting she had dealt solely with Husband, she was under the impression that Husband was also acting on behalf of Wife. However, because she had had no discussion of repayment of these monies with Wife before the October 8 meeting, Mother-in-law said that she was not seeking repayment from Wife of loans that were made prior to the meeting.[6] Mother-in-law admitted that her only conversation with either Husband or Wife about giving her a security interest in the marital home was with Husband. She could not specify the date on which this discussion occurred, saying only that it happened sometime in 2004.

After Mother-in-law's testimony, the Circuit Court heard testimony from Wife's mother, Dotsy Brittingham ("Brittingham"). Brittingham testified that she had no recollection of a meeting on October 8, 2002, but recalled being at another meeting in 2004 with Husband and Wife but without Mother-in-law present. Even though Mother-in-law was not at the 2004 meeting, Brittingham, Husband, and Wife nevertheless took the opportunity to discuss the money that Mother-in-law had been giving to Husband and Wife. According to Brittingham, Husband described the monies as an inheritance from his grandmother.

Wife testified after her mother's testimony. Wife acknowledged the October 8, 2002 meeting and explained that it was prompted by impending foreclosure proceedings on the parties' marital home. She said that Mother-in-law agreed at the meeting to help Husband and Wife bring the mortgage payments current. Wife maintained that the monies given to them by Mother-in-law were never described as a loan, that she never made an agreement with Mother-in-law to repay the

---

[6]Loans made prior to the October 8 meeting account for $62,711.68 of the $280,671.08 total. (Exh. 1).

amounts loaned, and that she never agreed to grant Mother-in-law a security interest in the marital home:

> Q: Now, tell the Court what [Husband] had told you about this money from his mother that's at the core of this case.
> A: He told me that this was inheritance from his grandmother's trust that she had left to him. That's what he told me 100 percent of the time. There was never any loan.

Husband testified last. He asserted that, although he never signed any loan documents or promissory notes, he had no doubt that the money from his mother was intended as a loan. Later during his testimony, however, Husband said that he thought that the money was part of an inheritance from his grandmother. He testified that he told Wife that the money was a loan that needed to be repaid, but conceded that he could not recall whether Wife agreed to such an arrangement.

At the conclusion of all of the evidence, the Circuit Court entered its final decree of divorce. Regarding Mother-in-law's claims, the Circuit Court found Husband not to be a credible witness, but credited the testimony of both Mother-in-law and Wife. The court found that Husband had told Wife that the money he had received from his mother was inheritance money, and that Wife had no knowledge that the money received was anything but a gift. The court found that the evidence did not support a finding that Husband acted as Wife's agent, and that Mother-in-law never discussed terms of repayment with Wife. The court therefore concluded that there was no contract of repayment between Mother-in-law and Wife and dismissed Mother-in-law's claim against Wife.

As to Mother-in-law's claim against Husband, the Circuit Court acknowledged that the Chancery Court had previously rendered a default judgment in favor of his mother, with the amount of damages to be decided later. The Circuit Court found that Mother-in-law was entitled to a judgment in the amount of $280,671.08 against Husband individually. However, the Circuit Court did not order Husband to execute a security agreement in favor of Mother-in-law, as she had requested in her original Chancery Court complaint.

In connection with the divorce between Husband and Wife, the Circuit Court distributed the proceeds realized upon the sale of the marital home. As noted above, the Chancery Court had previously transferred Mother-in-law's lien *lis pendens* on the home to the proceeds of the home's sale. The Circuit Court found that the sale of the home yielded $189,120.54, which was being held in trust at First Tennessee bank. The Circuit Court initially divided the proceeds by allocating $141,840.41 of the proceeds to Wife and $47,280.13 to Husband. After application of certain credits in Wife's favor, Husband's award of the proceeds from the sale was reduced to $31,452.91, and Wife's was increased to $157,667.63.[7] The Circuit Court also awarded a $5,000.00 attorney's lien

---

[7]The Circuit Court deducted from Husband's share of the proceeds the $17,958.22 needed to bring the first and second mortgages current, and added this amount to Wife's share. The court also divided between Husband and Wife

(continued...)

against the proceeds in favor of Husband's attorney. Finally, it awarded Wife $26,452.92 as alimony *in solido*, to be paid from the remaining proceeds awarded to Husband.[8]

After entry of the final decree, Wife filed a motion for additional findings of fact or to alter or amend the final decree. She requested, *inter alia*, that the Circuit Court make further findings of fact on the issue of Mother-in-law's claimed security interest in the marital residence. The Circuit Court granted Wife's motion and entered an amended final decree, stating, "[T]here was no discussion, or agreement that Catherine Smith [Mother-in-law] would be granted a security interest in the marital residence." The court also found that "Catherine Smith [Mother-in-law] did not discuss a security interest in the former [marital residence] with Mike Smith until an unspecified date in 2004."

Mother-in-law filed a timely notice of appeal. She also filed a motion to stay enforcement of the judgment pending appeal. Wife filed a motion to release the proceeds of the sale of the marital home. The Circuit Court denied Mother-in-law's motion to stay and ordered release of the proceeds. It ordered release of $5,000.00 made payable to Husband's attorney and $150,000.00 made payable to Wife.

On appeal, Mother-in-law argues that the Circuit Court erred in ordering that she be joined as a party in the divorce action and in failing to recognize and give effect to Mother-in-law's lien *lis pendens* against the proceeds from the sale of the marital residence. On appeal from a bench trial, we review questions of fact *de novo* on the record with a presumption of correctness. Tenn. R. App. P. 13(d); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 28-29 (Tenn. 1996). We review questions of law *de novo* with no presumption of correctness. *Campbell*, 919 S.W.2d at 28-29.

We first address Mother-in-law's contention that the Circuit Court erred in ordering that she be joined as a party to the divorce action. Mother-in-law argues first that, under the doctrine of former suit pending, the Circuit Court's joinder of her as a party improperly usurped the jurisdiction of the Chancery Court, the court in which Mother-in-law originally filed her lawsuit. She also argues that, by joining her to the divorce action, the Circuit Court misapplied Rule 19.01 of the Tennessee Rules of Civil Procedure.

The doctrine of former suit pending has long been applied by Tennessee courts. *See Clark v. Garrett*, 74 Tenn. 262, 266-67 (1880); *see also Metro. Dev. and Hous. Agency v. Brown Stove Works, Inc.*, 637 S.W.2d 876, 878 (Tenn. Ct. App. 1982). The doctrine has been described as follows: "When courts have concurrent jurisdiction, the one that first acquires jurisdiction thereby

---

[7](...continued)
the value of a retirement account held with Wife's employer. Husband's share of the proceeds from the sale of the home was increased in the amount of $2,131.00, which represented half of the value of the retirement account.

[8]These calculations are based on the August 14, 2006 Final Decree and Order of the Circuit Court. The January 5, 2007 Amended Final Decree and Order contains calculations that vary slightly from the original order. The variation seems to be the result of a calculation error.

acquires exclusive jurisdiction." ***Am. Lava Corp. v. Savena***, 476 S.W.2d 639, 640 (Tenn. 1972) (citation omitted). Stated another way, "It is elementary that when two courts have concurrent jurisdiction of a particular subject matter, that tribunal which first obtains jurisdiction retains it." ***Kizer v. Bellar***, 241 S.W.2d 561, 563 (Tenn. 1951) (quoting ***Casone v. State***, 140 S.W.2d 1081, 1083 (Tenn. 1940)). The Tennessee Supreme Court has made it clear, however, that the language in former suit pending cases giving priority to the court that first acquires jurisdiction does not mean that the pendency of an action begins with service of process. ***West v. Vought Aircraft Indus., Inc.***, 256 S.W.3d 618, 624-25 (Tenn. 2008). Rather, "the pendency of an action begins with the filing of a complaint." ***Id.*** at 624.

Wife filed her complaint for divorce in Circuit Court on July 13, 2005. Wife's divorce complaint asks the Circuit Court to equitably distribute the marital property. The Circuit Court was therefore authorized to "equitably divide, distribute or assign the marital property between the parties" and "to effectuate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties." T.C.A. § 36-4-121(a)(1), (3) (2005). Thus, upon the filing of Wife's complaint, the Circuit Court gained jurisdiction over the marital estate, including the marital home. Two months later, on September 16, 2005, Mother-in-law filed her lawsuit in the Chancery Court, alleging that Husband and Wife were in breach of a contract to grant her a security interest in the marital home and to repay the funds loaned.

Under these facts, the Circuit Court acquired jurisdiction over the marital home when Wife's divorce complaint was filed; Wife's divorce suit was the prior suit pending. Under the doctrine, therefore, when Mother-in-law subsequently filed her lawsuit in Chancery Court, the Circuit Court retained its jurisdiction over the marital home. ***Am. Lava Corp.***, 476 S.W.2d at 640. The argument that the Circuit Court improperly usurped the jurisdiction of the Chancery Court by ordering that Mother-in-law be joined as a party in the divorce action is wholly without merit.

Mother-in-law also contends that the Circuit Court misapplied Rule 19 of the Tennessee Rules of Civil Procedure, which governs the "Joinder of Persons Needed for Just Adjudication." Rule 19.01 states that a person subject to the court's jurisdiction "*shall* be joined as a party" under certain conditions. Tenn. R. Civ. P. 19.01 (emphasis added). Thus, the language of the Rule is directive and mandatory. Among the conditions mandating joinder are if the person to be joined "claims an interest relating to the subject of the action." ***Id.*** at 19.01(2). In her Chancery Court lawsuit, Mother-in-law clearly claimed an interest in the marital estate, and in particular the marital home. Moreover, Mother-in-law was "so situated that the disposition" of the divorce litigation in her absence could have "impair[ed] or impede[d]" Mother-in-law's ability to protect her interest in the marital home, or it could have left Husband or Wife "subject to a substantial risk of incurring . . . inconsistent obligations by reasons of [Mother-in-law's] claimed interest." ***Id.*** The Rule provides specifically that, if these conditions are met, a person such as Mother-in-law "may be made . . . an involuntary plaintiff." ***Id.*** at 19.01. Moreover, Mother-in-law fails to articulate how she was

prejudiced by the Circuit Court's joinder of her in the divorce litigation.[9] She does not argue that her ability to submit evidence or cross-examine witnesses was somehow impeded by proceeding as part of the Circuit Court litigation. Thus, under all of these circumstances, the Circuit Court properly ordered that Mother-in-law be joined as an involuntary plaintiff. *Id.*

Mother-in-law next argues that the Circuit Court erred by failing to recognize and give effect to her lien *lis pendens*. She contends that she should have had a lien against the Husband's share of the proceeds from the sale of the marital home *prior* to the Circuit Court's deductions for equitable distribution of the marital property, alimony *in solido* and Husband's attorney's fee.

On the same date that she filed her lawsuit in Chancery Court, Mother-in-law filed in the county register's office an abstract of her complaint in order to establish a lien *lis pendens* against the marital home.[10] The term *lis pendens*[11] is defined as a "notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." BLACK'S LAW DICTIONARY 942-43 (7th ed. 1999). Thus, the filing of the abstract does not establish that the person filing the abstract has a valid right to the lien; rather, it merely provides *notice* to those who would acquire the property that the person filing the abstract is asserting a claim against the property. *See* 51 AM. JUR. 2D *Lis Pendens* §§ 1, 3 (2000). It is designed primarily to protect unidentified third parties by alerting them as to litigation that may affect the title of the property. *Id.* § 2.

Here, the Circuit Court dismissed Mother-in-law's claim against Wife for the loaned monies. It then distributed the marital estate, including but not limited to the proceeds from the sale of the marital home. From the portion of the proceeds initially allocated to Husband—$47,280.13—the Circuit Court first deducted $15,827.22 as part of the equitable distribution of marital property. This reduced Husband's share to $31,452.91. A $5,000.00 lien was awarded against the remaining proceeds in favor of Husband's attorney. Finally, Wife was awarded $26,452.92 as alimony *in solido* to be paid from Husband's share of the proceeds. These deductions entirely depleted Husband's share of the proceeds from the sale of the marital home.

---

[9]Rule 36(b) of the Tennessee Rules of Appellate Procedure states:

> **(b) Effect of Error.** A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Tenn. R. App. P. 36(b).

[10]Mother-in-law's filing in the county register's office was pursuant to Tennessee Code Annotated § 20-3-101(a). *See supra* note 2.

[11]The term "*lis pendens*" means "a pending lawsuit." *See* BLACK'S LAW DICTIONARY 942-43 (7th ed. 1999).

Mother-in-law asserts that her lien *lis pendens* on the residence, which was transferred to the proceeds of its sale, took priority over the interests of those parties who received the proceeds, namely, Wife as well as Husband's attorney. She cites no authority supporting her assertion of priority as to Wife. As noted above, the Circuit Court found that Mother-in-law had no claim against Wife for repayment of the loan. Thus, Mother-in-law had no claim against monies awarded to Wife in the Circuit Court's distribution of the marital estate, regardless of whether those monies originated from the proceeds from the marital home. Mother-in-law likewise cites no authority for her assertion of priority over the claim of Husband's attorney for his fees. We find no error by the Circuit Court in refusing to award Mother-in-law a portion of the proceeds from the sale of the marital home, and note that Mother-in-law retains her award for damages against her son for repayment of the monies loaned during the marriage.

Wife requests that she be awarded her attorney's fees in defending this appeal. An award of appellate attorney's fees is a matter within this Court's sound discretion. ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). When considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case. ***Darvarmanesh v. Gharacholou***, No. 2004-00262-COA-R3-CV, 2005 WL 1684050, at \*16 (Tenn. Ct. App. July 19, 2005). Considering the relevant factors, we decline to award appellate attorney's fees to Wife in this case.

The judgment of the trial court is affirmed. Costs for this appeal are taxed to the Appellant, Catherine Smith, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE