# CIN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 18, 2014 Session

## CHRIS ERIC STRICKLAND v. PENNYE DANIELLE STRICKLAND

**Appeal from the Circuit Court for Putnam County**
**No. 08N0199     Amy Hollars, Judge**

___

**No. M2013-02657-COA-R3-CV - Filed September 9, 2014**

___

In the first appeal in this divorce action, the case was remanded for the trial court to adopt a parenting plan that increased Mother's parenting time and to adjust her child support obligation accordingly. Mother appeals the order entered on remand, contending that the trial court failed to give her meaningful parenting time as directed and by imputing income to her based on a finding that she is voluntarily underemployed. Finding no error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Pennye D. Weston, Cookeville, Tennessee, Pro Se.

Charlene Robin Vance, Watertown, Tennessee, for the appellee, Chris Eric Strickland.

## OPINION

This divorce action is before the court for a second time; the facts and procedural history of the case are set forth at *Strickland v. Strickland*, No. M2012-00603-COA-R3-CV, 2012 WL 6697296 (Tenn. Ct. App. Dec. 21, 2012). In the first appeal, Mother appealed the Final Order and Permanent Parenting Plan entered February 14, 2012; we affirmed the trial court's classification and division of the martial estate and the designation of Father as primary residential parent, but reversed the court's decision regarding the parenting plan. The case was remanded for the court to adopt a parenting schedule giving Mother more parenting time and to modify Mother's child support obligation accordingly.

On July 23, 2012, while the first appeal was pending, Mother filed a petition seeking to modify the parenting schedule; she alleged that a substantial and material change in circumstances within the meaning of Tenn. Code Ann. § 36-6-101 had occurred as a result of Father's move from Cookeville to Lebanon, Tennessee. A hearing was held on July 31 and the court entered an order on August 3 denying the motion ("the August 3, 2012 order"). The court held that Father's move was not a material change in circumstance, would not meaningfully affect the child's well-being, and that it would not interfere with Mother's visitation. The court further held that it was in the child's best interest to remain in the primary care of Father.

Pursuant to the order of remand, the court conducted a hearing on May 13, 2013, and entered a Final Order on Remanded Issues on May 31; a revised permanent parenting plan and a child support worksheet were attached to the order ("the May 31 order"). Of pertinence to this appeal, the order set Mother's parenting time at 145 days and Father's at 220 days, found that Mother was voluntarily underemployed and imputed monthly income of $1,733.33 to her.[1]

Mother moved to alter or amend the May 31 order, or in the alternative, to grant her a new trial pursuant to Tenn. R. Civ. P. 59. Mother asserted that the trial court did not comply with the Court of Appeals order to give her more meaningful parenting time; that the court should have considered Father's move to Lebanon and its effect on the child; and that the court erred by imputing income to her. A hearing on the motion was held on September 6, at the conclusion of which the court took the matter under advisement; the court held a follow up conference call with counsel on September 11 and on September 19 entered an order setting an evidentiary hearing for September 24 in order to "allow the parties the opportunity to put on proof as to the factors that affect the crafting of a permanent parenting plan order." The order also stated:

> 4. That this Court is not contemplating full litigation of this matter in any sense but rather finds it necessary to conduct a hearing concentrating on what has occurred since Father's move out of Putnam County and targeting on these issues which go into a best interest analysis for the sake of the child;
>
> 5. That this Court finds it necessary to make the record clear about what the circumstances are for this child now in his current situation and with the travel that is involved in getting this child back and forth between these parents;

---

[1] At the time of trial Mother had three children. Mother's and Father's child – her second child – was born May 2004. While the divorce was pending, Mother had another child, who was two years old at the time of trial; Mother subsequently married the father of her third child. In this case, we consider the issue of voluntary underemployment only with respect to the second child.

6. That the Court is interested in looking at whether the Thursday overnights are giving meaningful time to Mother, what is the effect on the child of the Sunday overnights with delivery to school on Monday mornings and any alternative ways to provide adequate parenting time for Ms. Weston if these times are not in the best interest of the child;

On September 17, Mother filed a motion pursuant to Tenn. R. Civ. P. 60.02 (4) asking the court for relief from the August 3, 2012 order on the ground that the order was based on a February 2012 order that was later reversed on appeal and that "as a result the trial court applied an erroneous standard."

A hearing on the Rule 60 motion took place at the evidentiary hearing on September 24. At the conclusion of the hearing, the court made certain findings and orally approved the parenting plan proposed by Father; the court modified its ruling the next day in a letter to counsel. The court entered a Final Order on November 8: denying Mother's Rule 60 motion; denying Mother's request to change the ruling that she was voluntarily underemployed; modifying the parenting plan in the May 31 order by setting Father's parenting time at 242.5 days and Mother's parenting time at 122.5 days; and setting the parties' child support obligations.[2] Mother appeals.

## DISCUSSION

### I. PARENTING PLAN

Trial courts are vested with broad discretion in fashioning permanent parenting plans and in doing so, must consider the unique circumstances of each case. *Burton v. Burton*, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *2 (Tenn. Ct. App. Feb. 9, 2009). A trial court's parenting plan will not be disturbed on appeal unless there is evidence that the court abused its discretion in fashioning the plan. A court abuses its discretion if it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

In remanding the case for the court to adopt a schedule that afforded Mother more parenting time, we stated that:

The evidence in this case does not preponderate against the trial court's finding that Father should be the primary residential parent and it does not

---

[2] The letter modifying the September 24 oral ruling, the parenting plan modifying the May 31 order, and the revised child support worksheet were attached to the November 8 order.

preponderate against the finding that Father should have more parenting time than Mother; however, the evidence does preponderate against restricting Mother's parenting time to 120 days a year. This is especially true realizing the close proximity of the parent's respective homes. . . .

*Strickland*, 2012 WL 6697296 at *14.

Mother contends that the parenting plan adopted in the November 8 Final Order does not comply with the Court of Appeals' instruction to adopt a parenting plan that would provide her with more parenting time; she further contends that the plan adopted is not in the child's best interest. We respectfully disagree.

At the September 24 hearing, the court heard testimony from Mother, Mother's husband Michael Weston, Father, and Father's neighbor Jason Harrison. At the conclusion of the hearing, the court made certain findings of fact and approved Father's proposed plan; the oral ruling was modified and supplemented in a letter to counsel of September 25. The November 8 order memorialized the oral ruling and letter, and the court made the following findings of fact:

3. That in addition to the ruling made by this Court in open court on September 24, 2013, this Court made additional findings as set forth in its letter memorandum dated September 25, 2013 . . . ;

4. That having heard the additional proof and having considered the arguments of counsel, and upon the entire record in this cause the Court finds that the Thursday overnight visitations which were provided in the original parenting plan and which were also maintained in the plan that was entered after a remand hearing, should be eliminated;

5. That the proof shows that the Thursday overnights are difficult for [child] and they are also difficult for Mother;

6. That the early morning travel is not beneficial and also that the additional parenting time that was attempted to be provided to Mother has not been utilized by Mother. Therefore, the Court finds that the Thursday overnights should be eliminated.

* * *

8. That Mother's suggested alternation of two (2) weekends for Mother followed by one weekend for Father is hereby adopted. That this plan has the

4

virtue of allowing more meaningful time for [child] with his mother and will also allow him to spend important time with his half-sibling [    ];

9. The court finds that in all other respects, the parenting plan proposed by Father will remain unchanged and is hereby adopted as it is in [child's] best interests. While the Court acknowledges a certain validity in Father's argument that the "2 to 1" alternation of weekends accords greater "hard parenting" time to him and more "fun" time to Mother, this Court has entrusted Father as the primary residential parent with the important day-to-day parenting time with [child]. In any event, the desires of the parents must be secondary to the best interests, given the fact that the parties live fifty miles apart and [child] is attending school in Lebanon (Wilson County).

* * *

11. The Court of Appeals on remand instructed that Mother's parenting time should not be limited to the 120 days provided in the parenting plan considering the close proximity of the homes of Mother and Father;

12. The parties now live an appreciable distance part; this is a fact with which the court must now deal, and yet, the Court is still trying to follow the Court of Appeals directive and provide Mother with more parenting time; the Court finds that Father's parenting plan does that in a way that is in the best interests of [child], and the Court approves that parenting plan.

We have reviewed the testimony and evidence from the September 24 hearing, and upon our review, the evidence does not preponderate against the trial court's findings set forth above. We also find that the court did not abuse its discretion by adopting the plan in the November 8 order, which, in light of all relevant factors, complied with the order of remand.

In the earlier appeal, we acknowledged that the close proximity of the parent's homes was a substantial factor against limiting Mother's residential parenting time to 120 days per year. While the case was on appeal for the first time, the court heard Mother's motion to modify the plan based on Father's move; the court determined that his move did not constitute a substantial and material change of circumstance within the meaning of Tenn. Code Ann. § 36-6-101. The May 31, 2013 order raised Mother's parenting time to 145 days; on Mother's motion to alter or amend, the court held an evidentiary hearing and determined, for various reasons which we have found supported by the evidence, that the May 31, 2013 plan was not in the child's best interest and that the November 8 plan, which sets Mother's residential parenting time at 122.5 days, was in the child's best interest. The November 8

order was entered in accordance with the order of remand, properly applied the law, and was supported by the evidence.

## II. IMPUTING INCOME TO MOTHER

The case was also remanded for the court to "make a new determination of Mother's current income or ability to earn income and set the child support obligation in accordance with the Child Support Regulations." *Strickland*, 2012 WL 6697296 at 15.[3] In the May 31 order the court determined that Mother was voluntarily underemployed and imputed monthly income of $1,733.33 to her; Mother contends that the trial court erred in holding that she was willfully underemployed and imputing income to her.

"Determining whether a parent is willfully and voluntarily underemployed and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances." *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). Accordingly, we review the trial court's determination in accordance with Tenn. R. App. P. 13(d), presuming the correctness of the trial court's factual findings unless the evidence preponderates otherwise. *Id.*

Based on the testimony at trial, the court made the following findings of fact in the May 31 order pertinent to its determination that Mother was voluntarily underemployed, which Mother does not contest:

> 17) That on the matter on remand as to recalculating the child support and determining Mother's income, this Court finds that at trial Mother testified at trial that she had a history of working and making in excess of $30,000.00 per year;
>
> 18) Mother has insurance licensure which remains current as a sales agent and she testified that because following the birth of her youngest child Mother no longer had the need for additional income and she chose to spend that

---

[3] In the first appeal, we reversed the determination which based Mother's child support obligation on a monthly income of $2,600.00; we noted:

> There is no evidence in the record that Mother's current income is $2,600 a month and the trial court made no finding that Mother was intentionally underemployed and the court made no imputed income finding. We have concluded that the evidence preponderates against the setting of Mother's child support obligation based upon a current income of $2,600.

*Strickland*, 2012 WL 6697296 at 15.

additional time with her children Mother elected to cut her hours back to a part-time schedule after her youngest child was born;

19) This Court finds that the proof at trial further showed that between 2002 when Mother obtained that licensure and 2008, Mother's employment remained essentially the same from 2002 through 2008;

20) This Court finds additionally that Mother indicated in her testimony when asked when she planned on going back to work on a full time basis to help support her family, Mother indicated that she would if necessary but she, at that time, had no plans to return to full time employment;

21) The Court finds that Mother currently works two (2) days per week at an insurance office for 14 hours a week at $10.00 per hour filling an administrative position rather than as a sales agent resulting in her income being quite distinctly less;

\*\*\*

23) The Court does not find that a determination may be based on any intentional choice or act that adversely affects a parent's income. In this case, Mother has training and certification to work as a sales agent and certainly has proven capacity to earn more than she currently elects to earn;

24) The Court finds that Mother has however been out of the workplace in that type of work as a sales agent for almost four years now;

25) The proof shows that at times before the divorce Mother was working 40 to 50 hours per week according to her testimony . . . ;

\*\*\*

27) This Court finds that Mother is currently working at a position earning $10.00 per hour part-time but this Court finds it is by Mother's choice that she works part-time and not because she is not able to be employed full-time.

At the September 24 hearing, Mother testified that her decision to work part time was voluntary and made because she wanted to spend time with her children and to "have her own spending money and not rely on [her husband] to pay for everything."[4]

Mother asserts that Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(iii)(III) supports her contention that she was not voluntarily underemployed. In so arguing, however, Mother focuses on only one of seven factors; the regulation governing imputing income and, specifically, the determination of underemployment requires the court to consider more.

Pursuant to Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(i)(I), a court may impute income "[i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." The Guidelines do not presume that a parent is willfully underemployed; rather, courts are directed to "ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(ii). "A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that affects a parent's income." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(ii)(I). Thus, courts should increase an underemployed parent's gross income to an amount that reflects the parent's income potential or earning capacity based upon his or her educational level and previous work experience. *See Dilley v. Dilley*, No. M2009-02585-COA-R3CV, 2011 WL 2015395 (Tenn. Ct. App. May 23, 2011), at *7– 8; *see also* Tenn. Comp. R. & Regs. 1240-02-04-.02(3)(a)2(ii)(II).

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(iii) provides that the court may consider seven factors when making a determination of whether a parent is willfully and voluntarily underemployed.[5] The court's findings in this case focused largely on Mother's

---

[4] In the November 8 order the court stated that it "decline[d] once again to change its ruling regarding its finding expressed in the [May 31 order] that [Mother] is voluntarily underemployed and that income should be imputed to her as the court had previously ordered."

[5] Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(iii) provides:

Factors to be Considered When Determining Willful and Voluntary Unemployment or Underemployment.

The following factors may be considered by a tribunal when making a determination of willful and voluntary underemployment or unemployment:

(I) The parent's past and present employment;

past and present employment, Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(iii)(I); her education, training, and ability to work, 1240-02-04-.04(3)(a)2(iii)(II); and her role as a stay-at-home parent, Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(iii)(III).

We have reviewed Mother's testimony from the divorce trial, as well as the transcripts of the May 13 and September 24, 2013, hearings; the evidence does not preponderate against the ruling that Mother was voluntarily underemployed. Further, the court considered the appropriate factors at Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(iii) shown by the evidence, including the factor relied upon by Mother, in making the determination to impute income to her.

---

(II) The parent's education, training, and ability to work;

(III) The State of Tennessee recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life. In considering whether there should be any imputation of income to a stay-at-home parent, the tribunal shall consider:

I. Whether the parent acted in the role of full-time caretaker while the parents were living in the same household;

II. The length of time the parent staying at home has remained out of the workforce for this purpose; and

III. The age of the minor children.

(IV) A parent's extravagant lifestyle, including ownership of valuable assets and resources (such as an expensive home or automobile), that appears inappropriate or unreasonable for the income claimed by the parent;

(V) The parent's role as caretaker of a handicapped or seriously ill child of that parent, or any other handicapped or seriously ill relative for whom that parent has assumed the role of caretaker which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in that role in the future;

(VI) Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's obligation to support his/her children and, to this end, whether the training or education will ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

(VII) Any additional factors deemed relevant to the particular circumstances of the case.

9

## III. CALCULATION OF DAYS

Mother contends that the trial court erred in calculating the number of days that she exercises parenting time; she asserts that she exercises 118 days of parenting time rather than 122.5 as found by the trial court. Mother does not explain the manner in which she alleges the court erred in calculating the number of days or how she arrived at the figure of 118 days for her parenting time and any asserted discrepancy is not apparent in the record.[6] In the absence of such explanation or appropriate citation to the record, we are unable to address this issue. *See* Tenn. R. App. P. 27(a)(7)(A).

## IV. ATTORNEY FEES

Father requests an award for the attorney fees he has incurred in this appeal. Whether to award attorney's fees on appeal is within this Court's sole discretion. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In considering a request for attorney's fees, we look at "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007) (citing *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)).

After weighing these considerations, we decline to award Father fees.

### CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
RICHARD H. DINKINS, JUDGE

---

[6] In her brief on appeal, Mother argues that the 145 days parenting time she was granted in the May 2013 order was, according to her calculation, actually 131 days. At the September 24 hearing, Mother testified and introduced exhibits relative to her calculations of days under the May 2013 order, based on what she characterized as the "Head In Bed" test and the "Midnight to Midnight" test. The order we are reviewing however, is the November 8 order which granted Mother 122.5 days, and the evidence introduced at the September 24 hearing does not explain Mother's calculation of the days awarded in the November 8 order.