IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 26, 2015 Session

## ZIA MOUSAVI KABIRI v. SHIRIN DAVARI KABIRI

**Appeal from the Circuit Court for Hamilton County**
**No. 13-D-231      Jacqueline Schulten Bolten,  Judge**

**No. E2014-01980-COA-R3-CV-FILED-OCTOBER 16, 2015**

This is a divorce action in a marriage of a long duration.  The trial court granted the parties a divorce and divided the marital property.  The wife appeals the trial court's classification of the parties' separate property, the valuation of their pensions, and the division of the marital property.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Sandra Jean Bott, Chattanooga, Tennessee, for the appellant, Shirin Davari Kabiri.

David Welch Noblit and Phillip C. Lawrence, Chattanooga, Tennessee, for the appellee, Zia Mousavi Kabiri.

## OPINION

## I.  BACKGROUND

Zia Mousavi Kabiri ("Husband"), 71 years old, filed this complaint for divorce against his spouse, Shirin Davari Kabiri ("Wife"), 61 years old at the time of the trial. Husband initially pled the ground of irreconcilable differences and later amended the

complaint to add the ground of inappropriate marital conduct. The parties, both naturalized U.S. citizens, had been married for 29 years, since October 6, 1984. Husband and Wife have one adult child together, a daughter named Arya, who is an architect living in Nashville.

Husband, immigrated to the United States from Iran in 1965. During the marriage, his second, Husband was employed at TVA as an engineer at a nuclear power facility. Husband took early retirement in 1994 because of the "attractive incentives" offered by TVA. He received a cash severance payment plus the addition of five years to his length of service and five years to his age, which resulted in increased benefits. He receives approximately $2,800 per month in Social Security benefits and TVA retirement. Husband currently manages rental properties owned by the parties.

At the time of the trial, Wife was employed as a teacher for Hamilton County Schools, where she has been employed for 20 years of the nearly 30 years the parties have been married. Wife testified she could not speak English upon coming to the United States after her marriage to Husband and had to learn the language to finish her education. She earns $48,000 per year as a teacher.

After Husband's retirement from TVA, he formed a business named Kabiri Enterprises, Inc. and built two restaurants in Atlanta and one in Long Island, New York. He found the restaurants involved too much travel, so he sold them. Afterward, Husband worked as an assistant college professor teaching engineering courses at Chattanooga State Technical Community College and as an adjunct professor at the University of Tennessee at Chattanooga.

At age 59 and a half, Husband began to withdraw money from his 401(k) to acquire houses for renovation. The Jarnigan Avenue house, his first property, had been abandoned for a number of years. Husband and a paid helper renovated the house over a period of about six months. The Tucker Street house required a complete renovation. The Rosewood Avenue house, which Husband partially financed, took about two months to renovate. Husband also obtained a house on Druid Lane. The proceeds from Husband's personal injury case recovery amounting to $76,805 were also invested in the rental properties.

After the parties' separation and the beginning of the divorce proceedings, the Druid[1] and Rosewood rental properties became vacant - Druid for a couple of months and Rosewood for five months. According to Husband, the Rosewood house filled with garbage, the windows were broken, the sheet rock had holes punched in it, and the doors were damaged. Husband repaired and renovated the Rosewood house again in three

---

[1] The Druid Lane house was sold on January 2, 2015, for $125,000. The net proceeds of the sale of $115,791.17 were placed in an interest bearing account by the trial court.

months. He repaired and re-hung sheet rock, painted, built a new garage door and installed it, and remodeled the kitchen by installing new cabinets and new appliances. Additionally, the exterior wood siding was repaired and repainted.

Husband addressed his management of the rental property. An interim order entered in this case provided that so long as Husband continued to manage the rental properties, he was required to keep an accounting of the income and expenses and to pay Wife one-third of the net proceeds. During the pendency of the divorce, Husband provided monthly spreadsheet accounting statements of the management of the rentals. He indicated on the spreadsheets how much was deposited from rent payments, property taxes paid, maintenance done with the properties, and common expenditures including house payments, the line of credit, and so forth. Upon the trial court's inquiry about Husband's categorization of common expenses, Husband testified it included, for instance, utilities for the Heritage Landing house, Comcast for television and Internet, mortgage payments, homeowners' association fees, pest control, and $2,368 to the Internal Revenue Service for the parties' 2012 joint income tax return.

From January 2013, through May 2014, Husband claimed $57,400 was collected in rent; expenses for maintenance and renovation amounted to $54,381; $2,059 was paid to Wife; and $961 remained. Husband testified his monthly Social Security benefit amount of $1,500 and retirement income of $1,300 were insufficient to pay the common expenditures because Wife had stopped depositing her income into the joint account as she had done prior to their separation. Of the net rental income, Husband calculated Wife received 4% and he received 1%.

According to Husband, Wife provided no services toward the maintenance and care of the rental properties. He testified Wife did not keep any of the accounting records and did not deal with the tenants. Wife claimed, however, she occasionally helped clean the houses on weekends and collected rent when Husband was away.

Wife contended Husband renovated with marital funds the properties he sought to be awarded in the divorce. She testified to receiving no rent in October 2013, November 2013, February 2014, March 2014, and April 2014. She asserted the total payments she received from August 2013 through May 2014 totaled $2,059. Wife argued she is entitled to one half of the rental proceeds for that period of $61,300, minus the reasonable expenses of $20,280 and the $2,059 paid to her, leaving $19,480.50 as her share of the rental income.

The parties owned a house in the Heritage Landing development in Chattanooga, purchasing the vacant lot in March 1998 for $115,000 and spending about $250,000 on the construction. At the time of trial, the house had been sold for $589,000. The net

proceeds of the sale of $173,947.40 have been equally divided between the parties by order entered December 4, 2014.[2]

Clarence Patten Hilliard, Sr., Husband's witness, testified concerning the present values of the parties' retirement benefits. Mr. Hilliard stated the present cash value of Wife's retirement benefit from the Tennessee Consolidated Retirement System was $224,512. He provided Husband's TVA retirement was comprised of two components, one a conventional defined benefit plan and the other a fixed account that generated a monthly interest payment. The conventional part of Husband's TVA retirement is in the form of a joint, fifty percent survivor annuity as opposed to a life annuity, the current value of which was found to be $115,513. Mr. Hilliard determined the value of the other component is fixed, and because Husband was only drawing the interest on it, the value of $80,992 does not change. The present combined cash value of both components of Husband's TVA retirement is $196,505.76, the sum of $115,513 and $80,992.76. Wife is entitled to receive the fifty percent survivor annuity upon Husband's death, and the present cash value of her survivorship annuity is $12,476. Wife did not present any evidence regarding valuation of the retirement plans.

During the marriage, Wife made several trips to Iran. According to Husband, when Wife took these trips, she would withdraw money to spend. He noted he gave her money to purchase gifts for herself on Christmas and her birthday because she did not like his taste. Husband testified, however, he did not make gifts of jewelry to Wife and any items of gold or diamonds purchased by her were strictly for investment purposes, bought because the price of gold was going up. Husband observed he did not object to Wife purchasing the jewelry and gold out of their joint account.

In regard to a list of Persian rugs acquired during the parties' marriage, Husband claimed one rug to be his separate property, as it was obtained when he visited Iran about ten years ago. He recalled visiting the bazaar where a relative showed him an array of rugs and he selected one for his daughter, Arya, and picked out one for the living room in his home. Although he personally selected the rug, he asserted his mother actually paid for it. The particular rug, 5' by 8', is a silk one. Wife valued the rug at $10,000, while Husband estimated it at $5,000.

Upon hearing the testimony and considering the evidence, the trial court made, inter alia, the following determinations:

> There is a huge dispute between the parties as the value and ownership of furniture and Persian rugs with no corroborating evidence offered by either party. Neither party proved to the Court's satisfaction the value and ownership of the furniture,

---

[2] Wife's motion to consider post judgment facts is granted.

jewelry and rugs. But the Court does believe, based on the proof, Arya's rug is hers and Husband's 5' x 8' rug is separate property.

The Court finds that all furniture and rugs should be amassed by an auction house of the parties choosing and sold to the highest bidder. Proceeds shall be equally divided between the parties. The Court further finds that both parties have substantially depleted the monetary assets of the marriage. No findings of contempt shall be meted so long as both parties comply with further orders of the Court.

* * *

The house at 511 Druid Lane reflects the greatest disparity in the opinions of the expert appraisers. Relative to two of the rental houses owned by the parties, it is small, it is in poor condition, and it is located on a very narrow street. This property shall be sold "as is" and the equity divided equally.

Expert testimony was provided by C. Pat Hilliard as to the respective present values of the retirement benefits in the separate names of Husband and Wife. Mr. Hilliard stated his opinion that the present value of Husband's TVA Retirement Services monthly pension benefit was $115,513 and, combined with the value of his fixed annuity account at $80,992.76, the entire account totaled $196,506 (rounded). He further testified that Wife would receive a joint and survivor 50% annuity upon Husband's death, the present value of which is $12,476. Mr. Hilliard testified that Wife's retirement benefit with Tennessee Consolidated Retirement System had a present value of $224,512. No contrary evidence of the present values of the retirement plans was provided by Wife.

The Court finds as speculative Husband's values of Wife's jewelry that he says she bought but was not valued by the appraiser. Wife turned over seven items of jewelry that were appraised by Fischer-Evans Jewelers. Husband says there are thirteen items for which Wife has failed to account. Husband testified that his opinion of the value of the items that were not produced by Wife for appraisal or otherwise accounted for amounts to $20,000.

\* \* \*

. . . [The] earning capacity [of Wife] is greater than Husband's. Husband has medical problems for which he gets treatment from a number of physicians and for which he takes medication. There is no evidence of Wife's having any health problems. . . .

\* \* \*

. . . [Wife] has been employed for a number of years as a teacher . . . and there is no evidence to show that she could not continue to be so employed.

\* \* \*

Wife has a greater earning capacity than Husband who was not employed other than in a capacity of tending to rental at the time of the parties' divorce . . . . So long as Wife continues her employment, her ability for future acquisitions of capital assets exceeds that of Husband, and, at a minimum, her retirement benefits will continue to accumulate and consequently increase her ultimate level of retirement income at the time she may choose to retire. Husband's retirement benefits are static.

\* \* \*

The court awarded the Jarnigan Avenue property valued at $185,000 to Wife. The total distribution to Wife was $497,057 compared to $490,133 to Husband. After the trial court considered motions to alter or amend by both parties, $29,058.50 was added to each party's award. This timely appeal followed.

## II.  ISSUES

We restate the issues raised by Wife in this appeal as follows:

A.    The trial court's actions in adopting Husband's proposed findings of facts and conclusions of law and by comments and rulings made during the trial constituted error.

B.     The trial court erred in the valuation of the parties' respective pensions resulting in an inequitable distribution of marital assets.

C.     The trial court erred in the classification of Wife's jewelry and gifts as marital property.

D.     The trial court erred in classifying the Persian rug purchased by Husband as his separate property.

E.     The trial court erred in failing to make findings of facts regarding the Husband's disposition of the proceeds from the parties' rental property and in failing to award Wife her share of the proceeds.

F.     Wife is entitled to her reasonable attorney's fees upon appeal.


### III. STANDARD OF REVIEW

The factual findings of the trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13 (d). With respect to legal issues, our review is conducted "under a pure de novo standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). The classification of particular property as either separate or marital is a question of fact to be determined in light of all relevant circumstances. *See Langford v. Langford*, 421 S.W.2d 632, 634 (1967); *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). This court gives great weight to a trial court's decisions regarding the division of marital assets, and we will not disturb the trial court's ruling unless the distribution lacks proper evidentiary support, misapplies statutory requirements or procedures, or results in some error of law. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

When valuing property, including a pension, a trial court's choice of which method to use to value the property remains in the sound discretion of the trial court after considering all relevant factors and circumstances. *Cohen v. Cohen*, 937 S.W.2d 823, 831-32 (Tenn. 1996). The parties are responsible for proposing the value of marital property, not the trial court. The value of a marital asset is determined by considering all relevant evidence regarding its value, and the trial court is free to place a value on a marital asset within the range of evidence submitted. *See Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn. Ct. App. 1993). The weight, faith, and credit to be given to any witness's

testimony lies in the first instance with the trier of fact. The credibility accorded will be given great weight by the appellate court. *Id.*

## IV. DISCUSSION

### A.

Wife contends the trial court should have recused itself. The initial basis for Wife's challenge to the trial court is an exchange that occurred upon the testimony of Henry Glascock, Husband's expert for the real estate appraisals. The trial court simply inquired of the witness, "How have you been?" Wife contends, however, the exchange reveals the court's bias in the case.

In consideration of Wife's assertion, we find it significant the trial court did not adopt any of Mr. Glascock's valuations of the parties' properties. As to the Tucker Street house, Mr. Glascock estimated its value at $105,000, Wife's expert, William Haisten, valued it at $125,000, and the trial court found the value to be $110,000. As to the only other real property valued by the trial court, the Rosewood house was estimated to have a value of $120,000, the mid-point of the values suggested by Mr. Glascock and Mr. Haisten.

Wife also questions the fact the trial court sustained the objection by Husband's counsel to Wife's being allowed to call a witness to testify during Husband's case in chief. On the first day of trial, June 20, 2014, during the Husband's cross-examination by Wife's attorney, the following colloquy occurred between Wife's attorney and the court:

> MS. BOTT: Your Honor, is this a good time to stop? I am not finished.
>
> THE COURT: No, let's go to 4:00. I want to get in as much today as we can.

Shortly after that exchange, Wife's attorney requested permission to call a witness to testify. Husband's attorney objected because Husband's case in chief was still in progress. The trial court exercised its discretion to deny the request to call a witness out of order. The denial of the request was a discretionary call the trial court was entitled to make. Trial judges have broad discretion over the admissibility of evidence, the order of the proof, the scope and extent of examination, and the qualification of expert witnesses. Accordingly, appellate courts will reverse a trial judge's decision on one of these matters only when the trial judge has abused his or her discretion and when the error has affected substantial rights of one or both of the parties. *See* Tenn. R. Evid. 103(a). *Castelli v. Lien*, 910 S.W.2d 420, 425 (Tenn. Ct. App. 1995) (internal citations omitted). Wife has not demonstrated any prejudice by any actions of the trial court.

Further, the trial court is criticized for incorporating into its memorandum opinion some of the language employed by Husband in his proposed findings of fact and conclusions of law. While the memorandum could have been more artfully prepared, and it appears selected paragraphs from Husband's proposed findings were utilized by the trial court in preparing its ruling, many conclusions advanced by Husband were rejected by the trial court. As noted by Husband:

(a) the trial court did not adopt Husband's expert's opinion of the value of the rental houses;

(b) the trial court did not accept Husband's proposed findings and conclusions that Wife had $20,000 worth of jewelry she had failed to disclose;

(c) the trial court did not adopt Husband's position that because of his superior contribution the marital estate should be divided in the proportions of 60% to him and 40% to Wife;

(d) the trial court did not find the post-separation withdrawals in cash by Wife were to be credited against her share of the marital estate; and

(e) the trial court did not adopt Husband's position Wife's failure to renew Husband's health insurance benefits for drug coverage amounted to a violation of the statutory injunction found in Tennessee Code Annotated section 36-4-104(d) and resulted in damage to him.

As noted in *State v. Beeler*, 387 S.W.3d 511 (Tenn. 2012), "[i]ssues involving recusal have always been held to rest soundly within the discretion of the judge whose recusal is sought." *Id*. at 525, n. 10 (citing *Bd. of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 546 (Tenn. 2004)). Effective July 1, 2012, a motion for recusal, where not otherwise required by law, must be made in writing and granted or denied in writing, Tenn. Sup. Ct. R. 10B, §1.01 ("Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, shall do so by a timely filed written motion."). At no time prior to this appeal was the trial court presented with this recusal issue.

"Whether recusal is necessary . . . rests within the discretion of the trial court." *State v. Reid*, 213 S. W. 3d 792, 815 (Tenn. 2006) (citing *State v. McCary*, 119 S.W.3d 226, 260 (Tenn. Crim. App. 2003) and *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991)). As admitted by Wife, "adverse rulings are not usually sufficient to

establish bias," *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008), and disqualification is not justified even if the rulings are "erroneous, numerous and continuous." *Allen v. State*, 882 S.W.2d 810 at 821 (Tenn. Crim. App. 1994). A judge's decision will not be reversed on appeal "unless clear abuse appears on the face of the record." *Reid*, 213 S.W.3d at 815. The record before us does not reveal proof mandating recusal. Wife has not demonstrated any of the determinations by the trial court were not supported by evidence presented in the case. Proof of bias by the trial court was not established by Wife.

B.

Based upon the testimony of Mr. Hilliard, the trial court determined the present values for Husband's TVA retirement plan, for the survivor annuity portion of Husband's TVA retirement plan, and for Wife's retirement plan with the Tennessee Consolidated Retirement System. Wife now takes issue with the trial court's adoption of the present value method of valuing the parties' pensions. She contends the court sua sponte failed to consider the various valuation methods for pensions as outlined in the case of *Snodgrass v. Snodgrass*, 295 S.W.3d 240 (Tenn. 2009).

Wife provided no alternate valuation method in this case. Without any alternate value for the trial court to select, it cannot be said the value chosen by the trial court to assign to these assets was wrong, as the parties were responsible for proposing the value of the asset. *See Koch*, 874 S.W.2d at 577. During the trial, when the court inquired of Wife's attorney about division of their retirements, it was asked, "Well, wouldn't that just be whatever the value is as of today?" Wife's attorney responded, "Yes, ma'am." The "choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances." *Snodgrass,* 295 S.W.3d at 258. The trial court's findings as to the values were within the range of competent evidence submitted and not clearly unreasonable.

C.

Wife asserts certain items of jewelry were her separate property. Marital property includes "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce." Tenn. Code Ann. §36-4-121(6)(1)(A). The division of the parties' marital estate begins with the classification of property as separate or marital; separate property is not part of the marital estate and, therefore, is not subject to division. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010). In the instant case, the trial court concluded:

> Neither party proved to the Court's satisfaction the value and
> ownership of the furniture, jewelry and rugs. But the Court

does believe, based on the proof; Arya's rug is hers and Husband's 5' x 8' rug is separate property.

Separate property includes "property acquired by a spouse at any time by gift[]. . . ." Tenn. Code Ann. §36-4-121(6)(2)(D). We have construed this provision "to mean that gifts by one spouse to another of property that would otherwise be classified as marital property are the separate property of the recipient spouse." *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). The burden of proving a gift is normally on the donee. *Pamplin v. Satterfield*, 265 S.W.2d 886, 888 (Tenn. 1954).

The determination of whether an asset is separate or marital property is a matter reserved to the sound discretion of the trial court. Because there was evidence the jewelry was purchased with marital funds and not clearly given as a gift, we cannot say the evidence preponderates against the finding by the trial court. Even if the trial court erred in classifying Wife's jewelry as marital property, Wife is in possession of her jewelry. The $10,115 value assigned by the trial court to the jewelry would not render the division of the marital estate inequitable.

D.

Wife argues the trial court erred in classifying the rug purchased during the marriage by Husband as separate property. She produced a receipt reflecting Husband paid $5,000 for the rug. The trial court elected to accept Husband's evidence over any contrary evidence given by Wife. The burden is upon Wife to demonstrate how the evidence preponderated against the trial court's findings, credibility to which we must give great weight. Wife has failed to demonstrate the evidence she presented preponderated against the trial court's findings. The credit to be given to the testimony of the parties lies in the first instance with the trial court.

E.

Wife contends that from the date of separation to the date of trial, Husband collected $61,300 in gross rental proceeds. She argues she is entitled to one half of the remainder of $38,961, the total left after payment of taxes, insurance, and routine maintenance. Wife asserts she should receive $19,480.50. She complains the trial court made no finding as to why Husband was allowed to keep the rental proceeds.

Husband provided the trial court a month-by-month accounting of the rental proceeds and the use of those proceeds in the payment of marital debt and management of the parties' rental properties. Wife cited the court to a summary that provided no evidentiary foundation for the values given and gave no citations to the record. The court's ability to classify assets depends on the adequacy of the evidence submitted by the parties. In this case, the evidence presented by Wife was insufficient to rebut the

proof presented by Husband. The task of valuing marital property depends on the evidence offered by the parties. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987).

F.

Marital property must be divided equitably between the parties without regard to fault. Tenn. Code Ann. § 36-4-121(a)(1); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). A division of marital property in an equitable manner does not require the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). However, an equitable division of property must reflect consideration of Tennessee Code Annotated section 36-4-121(c), which provides as follows:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>
> (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6)  The value of the separate property of each party;

(7)  The estate of each party at the time of the marriage;

(8)  The economic circumstances of each party at the time the division of property is to become effective;

(9)  The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)  The amount of social security benefits available to each spouse; and

(11)  Such other factors as are necessary to consider the equities between the parties.

The record before us does not reflect any failure by the trial court to consider the relevant factors in distributing the marital estate.

Wife appears to contend Husband dissipated the marital assets.  Indeed, the trial court observed, "both parties have substantially depleted the monetary assets of the marriage."

Dissipation of marital property occurs when one spouse wastes marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage in breaking down.  *Altman v. Altman*, 181 S.W.3d 676, 681-82 (Tenn. Ct. App. 2005).  It has been held "[t]he party alleging dissipation carries the initial burden of production and the burden of persuasion at trial."  *Beyer v. Beyer*, 428 S.W.3d 59 (Tenn. Ct. App 2013) (citing *Burden v. Burden*, 250 S.W.3d 899, 919 (Tenn. Ct. App. 2007), *perm. to app. denied,* (Tenn. Feb. 25, 2008)).  Under the facts in this case, Wife has failed to illustrate in the record where any dissipation for the purpose of depleting the marital estate occurred.

G.

Wife asserts she is entitled to attorney fees on appeal. Husband argues Wife has been awarded substantial financial assets to afford her own attorney fees, and neither the need for the payment of attorney fees nor Husband's superior ability to pay is demonstrated in this record.

The decision whether to award attorney fees on appeal is a matter within the sole discretion of this court.  *See Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App.

1995).  The appellate courts in this state have set forth the factors that should be applied when considering a request for attorney fees incurred on appeal.  These factors include the ability of the requesting party to pay fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable fact that need be considered.  *Dulin v. Dulin*, W2001-02969-COA-R3-CV, 2003 WL 22071454, at \*10 (Tenn. Ct. App. Sept. 3, 2003).  Wife has not demonstrated a lack of resources to pay her attorney fees and expenses.  In weighing these factors, we respectfully deny Wife's request for attorney fees on appeal.

## V.  CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded to the trial court for further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Shirin Davari Kabiri.

_____
JOHN W. McCLARTY, JUDGE